NOTICE
Decision filed 05/10/16. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2016 IL App (5th) 130514

NO. 5-13-0514

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 12-CF-965 |
| | ) | |
| CEDRIC POLLARD, | ) | Honorable |
| | ) | John Baricevic, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE SCHWARM delivered the judgment of the court, with opinion.
Justices Chapman and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1   The defendant, Cedric Pollard, appeals the constitutionality of the Sex Offender Registration Act (the Registration Act or SORA) (730 ILCS 150/1 *et seq.* (West 2014)), the Sex Offender Community Notification Law (the Notification Law) (730 ILCS 152/101 *et seq.* (West 2014)), and additional statutes, including those restricting his residency and presence in areas frequented by children (720 ILCS 5/11-9.3, 11-9.4-1 (West 2014)), requiring him to renew his driver's license annually (730 ILCS 5/5-5-3(*o*) (West 2014)), and precluding him from petitioning for a name change (735 ILCS 5/21-101 (West 2014)).  The defendant argues that this statutory scheme, which he labels as

1

"the SORA Statutory Scheme," imposes lifelong affirmative disabilities and restraints that violate the due process guarantees of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2), in addition to the proportionate penalties guarantees of the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Following the persuasive, well-reasoned opinion in *People v. Avila-Briones*, 2015 IL App (1st) 132221, we affirm.

¶ 2                                    I.  BACKGROUND

¶ 3     The defendant was indicted on one count of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)) for knowingly committing an act of sexual penetration with a minor under 13 years of age on July 1, 2012. The defendant pled guilty to the offense of predatory criminal sexual assault and was sentenced to 16 years' incarceration with the Department of Corrections, followed by a 3-year-to-lifetime period of mandatory supervised release. The defendant directly appeals his conviction.

¶ 4                         II. SEX OFFENDER STATUTORY SCHEME

¶ 5     "The Registration Act was passed by the General Assembly 'in response to concern over the proliferation of sex offenses against children.' " *People v. Cornelius*, 213 Ill. 2d 178, 194 (2004) (quoting *People v. Adams*, 144 Ill. 2d 381, 386 (1991)). "By requiring sex offenders to register with local law enforcement agencies, 'the legislature sought to create an additional method of protection for children from the increasing incidence of sexual assault and sexual abuse.' " *Id.* (quoting *Adams*, 144 Ill. 2d at 387).

"The Registration Act was designed to aid law enforcement agencies in allowing them to 'monitor the movements of the perpetrators by allowing ready access to crucial information.' " *Id.* (quoting *Adams*, 144 Ill. 2d at 388). "Similarly, the Notification Law, by disseminating the information gathered through the Registration Act, is intended to protect the public." *Id.*

¶ 6                              A. Sex Offender Registration Act

¶ 7      The defendant's conviction for predatory criminal sexual assault qualifies him as a "sexual predator" under the Registration Act. 730 ILCS 150/2(E)(1) (West 2014) ("sexual predator" means any person convicted of predatory criminal sexual assault of a child). As a sexual predator, the defendant has a duty to register in person with the law enforcement agency in the municipality or county where he resides within three days of his release from prison. 730 ILCS 150/3(a), (c)(4) (West 2014). He will also have to register with the law enforcement agency in any municipality or county where he is temporarily domiciled for at least three days. 730 ILCS 150/3(a) (West 2014). If he is temporarily absent from his current address for three or more days, he must notify law enforcement, providing his travel itinerary. *Id.* If he lacks a fixed residence, he must report weekly, in person, to the law enforcement agency where he is located. *Id.* If the defendant works for or attends an institution of higher learning, he must register with not only the police department in the jurisdiction where the school is located, but also "the public safety or security director of the institution of higher education." 730 ILCS 150/3(a)(i), (ii) (West 2014). Within three days of obtaining or changing employment, he

3

must report, in person, the business name and address of his employer. 730 ILCS 150/3(d) (West 2014).

¶ 8    Each time he registers, the defendant must provide information about himself, including:

"a current photograph, current address, current place of employment, [his] telephone number, including cellular telephone number, the employer's telephone number, school attended, all e-mail addresses, instant messaging identities, chat room identities, and other Internet communications identities that the sex offender uses or plans to use, all Uniform Resource Locators (URLs) registered or used by the sex offender, all blogs and other Internet sites maintained by the sex offender or to which the sex offender has uploaded any content or posted any messages or information, extensions of the time period for registering *** and, if an extension was granted, the reason why the extension was granted and the date the sex offender was notified of the extension. The information shall also include a copy of the terms and conditions of parole or release signed by the sex offender and given to the sex offender by his or her supervising officer or aftercare specialist, the county of conviction, license plate numbers for every vehicle registered in the name of the sex offender, the age of the sex offender at the time of the commission of the offense, the age of the victim at the time of the commission of the offense, and any distinguishing marks located on the body of the sex offender." 730 ILCS 150/3(a) (West 2014).

4

¶ 9     The defendant must provide positive identification and documentation that substantiates proof of the registering address.  730 ILCS 150/3(c)(5) (West 2014). Registration may include fingerprints and must include a current photograph, to be updated annually.  730 ILCS 150/8(a) (West 2014).  He shall pay a $100 initial registration fee and a $100 annual renewal fee.  730 ILCS 150/3(c)(6) (West 2014).  The defendant must reregister annually, and the law enforcement agency with which the defendant is registered may require him to appear, on request, up to four more times per year. 730 ILCS 150/6 (West 2014).  If the information the defendant previously provided changes, he will have to notify the law enforcement agency he registered with, in person, within three days.  730 ILCS 150/3, 6 (West 2014).

¶ 10    Because the defendant is classified as a sexual predator, he will be required to comply with these provisions for the rest of his life.  730 ILCS 150/7 (West 2014).  If the defendant fails to comply with any of these requirements, he may be convicted of a Class 3 felony.  730 ILCS 150/10(a) (West 2014).

¶ 11                    B.  Sex Offender Community Notification Law

¶ 12    The Notification Law works in tandem with the Registration Act.  See *Cornelius*, 213 Ill. 2d at 181.  Pursuant to the Notification Law, law enforcement authorities must disclose a sex offender's name, address, date of birth, place of employment, school, e-mail address, instant messaging identities, chat room identities, "other Internet communications identities," and the offense or adjudication of the sex offender to the following persons and entities in the county: institutions of higher education, public school boards, child care facilities, libraries, public housing agencies, the Illinois

5

Department of Children and Family Services, social service agencies providing services to minors, volunteer organizations providing services to minors, and any victims of any sex offenses (not just the victim of the sex offense for which the sex offender has been convicted). 730 ILCS 152/120(a), (a-2), (a-3) (West 2014). The police must also inform these people and institutions of any URLs "registered or used by the sex offender," blogs or Internet sites "maintained by the sex offender or to which the sex offender has uploaded any content or posted any messages or information." *Id.* The police, "in [their] discretion," are allowed to disclose this information "to any person likely to encounter a sex offender, or sexual predator." 730 ILCS 152/120(b) (West 2014). For all other members of the public, this information must be made available on request. 730 ILCS 152/120(c) (West 2014).

¶ 13   Law enforcement may place "the information specified"−including the offender's name, address, date of birth, e-mail addresses, instant messaging identities, chat room identities, and other Internet communications identities, all URLs, all blogs, the offense for which the offender was convicted, the offender's photograph, and employment information−on the Internet or in other media. 730 ILCS 152/120(d) (West 2014). Law enforcement may also publish the photographs of sex offenders where any victim was 13 years of age or younger in a newspaper or magazine of general circulation in the municipality or county or may disseminate the photographs of those sex offenders on the Internet or on television. 730 ILCS 152/120(c) (West 2014).

¶ 14   The Illinois State Police must also maintain a statewide sex offender website making sex offenders' registration information available to the public. 730 ILCS

6

152/115(a), (b) (West 2014). The State Police "must make the information contained in the Statewide Sex Offender Database accessible on the Internet by means of a hyperlink labeled 'Sex Offender Information' on the Department's World Wide Web home page." 730 ILCS 152/115(b) (West 2014). Sex offenders must be searchable "via a mapping system which identifies registered sex offenders living within 5 miles of an identified address." *Id.*

¶ 15                    C. Residency, Employment, and Presence Restrictions

¶ 16    Further, the defendant will be prohibited from living in certain areas based on his status as a child sex offender. He may not knowingly reside within 500 feet of a school that children under the age of 18 attend or within 500 feet of "a playground, child care institution, day care center, part day child care facility, day care home, group day care home, or a facility providing programs or services exclusively directed toward persons under 18 years of age." 720 ILCS 5/11-9.3(b-5), (b-10) (West 2014). He may not knowingly reside within 500 feet of the victim of the sex offense, provided the victim is under 21 years old. 720 ILCS 5/11-9.3(b-15) (West 2014)

¶ 17    Defendant will also be restricted in his employment and other activities. He may not work or volunteer at a day care, part day care, child care institution, school providing before and after school programs, day care home, group day care home, or other facility providing programs or services exclusively directed toward persons under the age of 18. 720 ILCS 5/11-9.3(c) (West 2014). He may not "participate in a holiday event involving children under 18 years of age, including but not limited to distributing candy or other items to children on Halloween, wearing a Santa Claus costume on or preceding

7

Christmas, being employed as a department store Santa Claus, or wearing an Easter Bunny costume on or preceding Easter."  720 ILCS 5/11-9.3(c-2) (West 2014).  While he can participate in holiday activities with his own child "in the home," "other non-familial minors" may not be present at such a celebration.  *Id.*  He may not work at, or "be associated with," any county fair when children are present.  720 ILCS 5/11-9.3(c-5) (West 2014).  If he owns and lives in an apartment building, he may not rent out one of the units in the building to a parent of a child under the age of 18.  720 ILCS 5/11-9.3(c-6) (West 2014).  He may not drive an ambulance, fire truck, or other emergency vehicle.  720 ILCS 5/11-9.3(c-8) (West 2014).  Nor can he drive an ice cream truck or other "vehicle which is specifically designed, constructed or modified and equipped to be used for the retail sale of food or beverages."  *Id.*  He may not knowingly offer or provide programs or services to children.  720 ILCS 5/11-9.3(c-7) (West 2014).  He may not communicate, other than for a lawful purpose, using the Internet or any digital media, with a person under 18 years of age, unless the offender is a parent or guardian.  720 ILCS 5/11-9.3(b-20) (West 2014).  If the defendant violates any of the above restrictions on where he can live or work, he will have committed a Class 4 felony.  720 ILCS 5/11-9.3(f) (West 2014).

¶ 18    Other statutory provisions applicable to defendant by virtue of his conviction will penalize him for being near schools.  The defendant is prohibited from knowingly being present in "any school building, on real property comprising any school, or in any conveyance owned, leased, or contracted by a school to transport students to or from school or a school related activity" when children are present, unless he is attending a

8

conference at a school concerning his own child. 720 ILCS 5/11-9.3(a) (West 2014). He shall not knowingly be present "within 100 feet of a site posted as a pick-up or discharge stop for a conveyance owned, leased, or contracted by a school to transport students to or from school or a school related activity" when children are present. 720 ILCS 5/11-9.3(a-5) (West 2014). He may not knowingly loiter within 500 feet of school property when children are present. 720 ILCS 5/11-9.3(b) (West 2014). He may not knowingly be present at any facility providing programs directed toward children. 720 ILCS 5/11-9.3(c) (West 2014). If he violates these provisions, he will have committed a Class 4 felony. 720 ILCS 5/11-9.3(f) (West 2014).

¶ 19    Likewise, the defendant shall not knowingly be present in any "public park" (720 ILCS 5/11-9.4-1(b) (West 2014))−defined as any "park, forest preserve, bikeway, trail, or conservation area under the jurisdiction of the State or a unit of local government" (720 ILCS 5/11-9.4-1(a), (b) (West 2014))−or loiter within 500 feet of any "public park" (720 ILCS 5/11-9.3(b-2), 11-9.4-1(c) (West 2014)). If he is present in or loitering near a public park, he will have committed a misdemeanor, and any future violations will be a Class 4 felony. 720 ILCS 5/11-9.4-1(d) (West 2014).

¶ 20                    D.  Other Provisions

¶ 21    Furthermore, the defendant will be required to renew his driver's license annually. 730 ILCS 5/5-5-3(*o*) (West 2014). He will also be prohibited from changing his name. 735 ILCS 5/21-101 (West 2014).

¶ 22                                    III.  ANALYSIS

¶ 23    The defendant requests this court to declare the SORA Statutory Scheme facially unconstitutional pursuant to the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2).  In the alternative, the defendant requests this court to declare the SORA Statutory Scheme unconstitutional as applied to him pursuant to the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).  The defendant's arguments, *i.e.*, that the SORA Statutory Scheme is different than the versions determined to be constitutional in prior case law, has become so onerous that it has crossed the threshold from a civil regulatory scheme to a system of punishment, and therefore, violates the constitutional prohibitions on cruel and unusual punishment, as well as his right to procedural and substantive due process, mirror those made in *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 1.  In rejecting the defendant's contentions on appeal, we follow the First District court's persuasive reasoning in *Avila-Briones*.  *Id.*

¶ 24    "A statute is presumed constitutional, and the party challenging the statute bears the burden of demonstrating its invalidity."  *People v. Malchow*, 193 Ill. 2d 413, 418 (2000).  "This court has a duty to construe a statute in a manner that upholds its validity and constitutionality if it can be reasonably done."  *Id.*  "If a statute's construction is doubtful, a court should resolve that doubt in favor of the statute's validity."  *Cornelius*, 213 Ill. 2d at 189-90.  "Whether a statute is constitutional is a question of law that we review *de novo*."  *Malchow*, 193 Ill. 2d at 418.

¶ 25                              A. Standing

¶ 26    Initially, we note that the defendant has standing to raise his substantive and procedural due process claims and his eighth amendment/proportionate penalties claims. "In order to have standing to bring a constitutional challenge, a party must show that he is within the class aggrieved by the alleged constitutionality." *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 27 (citing *In re M.I.*, 2013 IL 113776, ¶ 32). He " 'must have suffered or be in immediate danger of suffering a direct injury as a result of enforcement of the challenged statute.' " *Id.* (quoting *People v. Greco*, 204 Ill. 2d 400, 409 (2003)). "The claimed injury must be: (1) distinct and palpable; (2) fairly traceable to defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Id.* (citing *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 119-20 (2004)).

¶ 27    The SORA Statutory Scheme provisions that the defendant challenges will automatically apply to him on his release from prison. As a result of his conviction, he will be subject to the SORA Statutory Scheme, including registration restrictions, residency restrictions, employment restrictions, restrictions on where he may be present, and restrictions on his privileges to drive or change his name, for the rest of his life, and no contingency needs to occur before these laws apply to him. He will be subject to a lifetime of government surveillance and restraint and must alter his behavior in a way that the vast majority of the public never will. Further, a favorable ruling from this court invalidating these restrictions would redress these injuries. He therefore has standing to

11

raise his eighth amendment/proportionate penalties challenges and his due process challenges to the SORA Statutory Scheme.  See *id.* ¶¶ 31-43.

¶ 28                                    B.  Due Process

¶ 29    The fourteenth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution protect individuals from the deprivation of life, liberty, or property without due process of law.  U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.  The case law acknowledges two distinct strands of due process analysis: substantive due process and procedural due process.  See *Doe v. City of Lafayette*, 377 F.3d 757, 767-68 (7th Cir. 2004); *In re J.R.*, 341 Ill. App. 3d 784, 791 (2003).  With regard to substantive due process, the appropriate inquiry is "whether the individual has been subjected to 'the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.' "  *City of Lafayette*, 377 F.3d at 768 (quoting *Bank of Columbia v. Okely*, 17 U.S. 235, 244 (1819)).  Procedural due process allows the government to deprive a citizen of "life, liberty, or property" only in accordance with certain procedural protections.  See *id.* at 767-68.

¶ 30                               i. *Substantive Due Process*

¶ 31    The defendant argues that the SORA Statutory Scheme violates the due process protections of the federal and Illinois constitutions by imposing punishment without considering the circumstances of each offender.  Substantive due process bars the government from arbitrarily exercising its power without the reasonable justification of serving a legitimate interest.  *Daniels v. Williams*, 474 U.S. 327, 331 (1986).  "When confronted with a claim that a statute violates the due process guarantees of the United

States and Illinois Constitutions, courts first must determine the nature of the right purportedly infringed upon by the statute." *In re J.W.*, 204 Ill. 2d 50, 66 (2003).

¶ 32 Where the right infringed upon is a constitutionally protected fundamental right, the statute is subject to strict scrutiny analysis. *Cornelius*, 213 Ill. 2d at 204. Pursuant to strict scrutiny analysis, the statute must serve a compelling government interest and be narrowly tailored to serve that interest. *Id.* If the statute does not affect a fundamental constitutional right, then the test for determining whether the statute complies with substantive due process requirements is the rational basis test. *People v. Wright*, 194 Ill. 2d 1, 24 (2000). To satisfy this test, a statute need only bear a rational relationship to the purpose the legislature sought to accomplish in enacting the statute. *Cornelius*, 213 Ill. 2d at 203-04. "Pursuant to this test, a statute will be upheld if it 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' " *J.W.*, 204 Ill. 2d at 67 (quoting *Adams*, 144 Ill. 2d at 390).

¶ 33 The defendant argues that the right to be free from a lifetime of burdensome, intrusive monitoring and restrictions constitutes a fundamental right to liberty. The defendant argues that the SORA Statutory Scheme impinges on his fundamental right to liberty because it will continue to regulate all aspects of his life. The defendant argues that the SORA Statutory Scheme is not properly tailored to protect the public because it fails to provide a method to determine an offender's future risk to the community or a method to petition to be relieved of the burdens of registering after demonstrating no future risk of offending.

¶ 34 Specifically, the defendant takes issue with SORA's lifetime in-person reporting requirement (730 ILCS 150/1 *et seq.* (West 2014)); the restriction of his residence and his presence in areas frequented by children (720 ILCS 5/11-9.3, 11-9.4-1 (West 2014)); the requirement that he renew his driver's license annually (730 ILCS 5/5-5-3(*o*) (West 2014)); and the prohibition from petitioning for a name change (735 ILCS 5/21-101 (West 2014)).

¶ 35 The narrow category of recognized "fundamental rights" includes the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). Our supreme court has held that sex offender registration provisions do not affect fundamental rights. *J.W.*, 204 Ill. 2d at 67; see also *People v. Fredericks*, 2014 IL App (1st) 122122, ¶ 40 (lifetime sex offender registration is not a constraint on liberty). Our supreme court has further held that the sex offender notification provisions, including Internet dissemination of sex offenders' personal information, do not impact fundamental rights because "the right to be free from the shame, stigma[,] and embarrassment resulting from a conviction for sexually abusing a child is not the kind of fundamental right contemplated by our constitution." (Internal quotation marks omitted.) *Cornelius*, 213 Ill. 2d at 204; see also *Paul v. Davis*, 424 U.S. 693, 701 (1976) (damage to reputation does not deprive individual of protected liberty or property interest); *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 74.

¶ 36    Moreover, Illinois courts have rejected the suggestion that residency restrictions on sex offenders violate fundamental rights.  See *People v. Leroy*, 357 Ill. App. 3d 530, 534 (2005) (rejecting claim that residency restriction affected fundamental right to decide who to live with because defendant did not have fundamental right "to live with his mother and enjoy her support within 500 feet of a school").  Further, the prohibitions on the defendant's presence near school property or public parks do not affect fundamental rights.  See *People v. Stork*, 305 Ill. App. 3d 714, 720-21 (1999) (statute prohibiting sex offender's presence on school grounds did not affect fundamental constitutional right); *Brown v. City of Michigan City*, 462 F.3d 720, 733 (7th Cir. 2006) (right to enter park not fundamental right); *City of Lafayette*, 377 F.3d at 769-71 (asserted right to enter parks to loiter is not implicit in the concept of ordered liberty and is not fundamental right); see also *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 75-76.

¶ 37    Likewise, requiring the defendant to renew his driver's license annually does not affect a fundamental right because the right to drive and the right to possess a driver's license is not a fundamental right.  *Guerrero v. Ryan*, 272 Ill. App. 3d 945, 951 (1995) (continued use and possession of driver's license is not a fundamental right).  Moreover, the defendant does not cite any authority to support the contention that he has a fundamental right affected by the prohibition on changing his name.  See *In re Marriage of Charnogorsky*, 302 Ill. App. 3d 649, 660 (1998) (finding no authority to support notion that naming one's child is fundamental right); see also *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 75.

¶ 38   Having concluded that the SORA Statutory Scheme does not impact the defendant's fundamental rights, we apply rational basis review.  See *J.W.*, 204 Ill. 2d at 67.  Pursuant to rational basis review, we address two questions: (1) whether there is a legitimate state interest behind the statutes; and, if so, (2) whether there is a reasonable relationship between that interest and the means the legislature chose to pursue it.  *People v. Johnson*, 225 Ill. 2d 573, 584-85 (2007); see also *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 81.

¶ 39   It is well established that there is a legitimate state interest behind the SORA Statutory Scheme.  It serves the goal of protecting the public from sex offenders.  See *J.W.*, 204 Ill. 2d at 68 (notification law designed to protect public from sex offenders); *Malchow*, 193 Ill. 2d at 420 (registration and notification provisions regarding sex offenders create additional measure of protection for children from the increasing incidence of sexual assault and child abuse); *Adams*, 144 Ill. 2d at 390 (sex offender registration provisions designed to protect public from sex offenders).  Thus, we turn to whether the statutory scheme bears a rational relationship to that goal.

¶ 40   The defendant argues that without a mechanism to determine which offenders pose a risk of recidivating, the SORA Statutory Scheme cannot be deemed rationally related to protecting the public from those with a high risk of reoffending.  The defendant argues that the SORA Statutory Scheme is therefore overinclusive in that it may impose burdens on individuals who pose no threat to the public because they will not reoffend.

¶ 41   "As our supreme court has held, SORA and the Notification Law help law enforcement and private individuals keep track of sex offenders by providing information

about their presence and offenses." *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 84 (citing *Cornelius*, 213 Ill. 2d at 205, and *J.W.*, 204 Ill. 2d at 67-68). There is a direct relationship between the registration and notification of sex offenders and the protection of children. *J.W.*, 204 Ill. 2d at 67-68; *Adams*, 144 Ill. 2d at 391. There is also a direct relationship between the residency, employment, and presence restrictions of sex offenders and the protection of children. As noted by the First District court in *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 84:

> "[B]y keeping sex offenders who have committed offenses against children away from areas where children are present (*e.g.*, school property and parks) and out of professions where they could come in contact with children (*e.g.*, driving an ice cream truck, being a shopping-mall Santa Claus) or vulnerable people (*e.g.*, driving an emergency services vehicle), the legislature *** rationally sought to avoid giving certain offenders the opportunity to reoffend."

¶ 42 Moreover, although the defendant suggests alternate means of accomplishing the legislature's objective in this case, *i.e.*, evaluation of his future dangerousness as a sex offender and a chance of reprieve, "it is well settled that the rational basis test does not require that the statute be the best means of accomplishing the legislature's objectives." *J.W.*, 204 Ill. 2d at 72. As long as the legislation has a rational relationship to the government objectives, it is valid even if it is to some extent overinclusive, underinclusive, or both. *In re Estate of Muldrow*, 343 Ill. App. 3d 1148, 1154 (2003) (citing *New York City Transit Authority v. Beazer*, 440 U.S. 568, 592 n.39 (1979)); see also *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 83. Although the SORA Statutory

17

Scheme may be overinclusive, thereby imposing burdens on offenders who pose no threat to the public because they will not reoffend, there is a rational relationship between the registration, notification, and restrictions of sex offenders and the protection of the public from such offenders. *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 84. "It is best left to the legislature and not the courts to determine whether a statute is wise or whether it is the best means to achieve the desired result." *J.W.*, 204 Ill. 2d at 72; see also *Smith v. Doe*, 538 U.S. 84, 103 (2003) (legislature's findings were consistent with grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class). "If there is any conceivable basis for finding a rational relationship, the statute will be upheld." *J.W.*, 204 Ill. 2d at 72.

¶ 43    Accordingly, the SORA Statutory Scheme survives rational basis scrutiny, advancing the government's legitimate goal to protect children from sexual predators. See *Cornelius*, 213 Ill. 2d at 205 (Internet dissemination provisions found in section 115(b) of the Notification Law, allowing for Internet dissemination of sex offender data, bore rational relationship to the purpose the legislature intended to achieve in enacting the statute, *i.e.*, to assist law enforcement and to protect the public from sex offenders, and did not violate substantive due process rights); *J.W.*, 204 Ill. 2d at 67-68 (sex offender registration and notification provisions, requiring defendant to register for life, reasonably served the purpose of assisting law enforcement in protecting children against sex offenders, thus satisfying the requirements of substantive due process (citing *Adams*, 144 Ill. 2d at 390-91, and *Malchow*, 193 Ill. 2d at 420)).

¶ 44 In sum, we find that the SORA Statutory Scheme does not affect fundamental rights enshrined in the substantive due process clause and is rationally related to the goal of protecting the public from the possibility that sex offenders will commit additional sex offenses against children. *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 2. We therefore reject the defendant's claim that the statutes at issue violate substantive due process.

¶ 45                                  ii. *Procedural Due Process*

¶ 46 "Procedural due process claims challenge the constitutionality of the specific procedures used to deny a person's life, liberty, or property." *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 201 (2009). Procedural due process requires that a person in danger of serious loss of life, liberty, or property be given notice of the case against him and opportunity to present any objections. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976); *Konetski*, 233 Ill. 2d at 201. Due process is a flexible concept, and not all situations that require procedural safeguards require the same kind of procedure. *Konetski*, 233 Ill. 2d at 201. Courts should consider the following factors to evaluate a procedural due process claim: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that an additional or substitute procedural safeguard would entail. *Mathews*, 424 U.S. at 335; *Konetski*, 233 Ill. 2d at 201. "A procedural due process claim presents a legal question subject to *de novo* review." *Konetski*, 233 Ill. 2d at 201.

¶ 47 We find that even if the SORA Statutory Scheme affected the defendant's liberty or property interests, no additional procedures would be necessary to satisfy due process. See *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 89. The defendant contends that the missing procedural safeguard in this case is a mechanism by which the state should winnow those registrants who pose little danger to society from the sex offender registry. According to the defendant, such a procedure would ensure that the restrictions of the SORA Statutory Scheme burden only those who pose a risk of committing additional sexual crimes. As noted by the First District court in *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 91-92:

> "[T]he United States Supreme Court rejected a nearly identical argument in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003). There, the Court held that Connecticut was not required to hold a 'hearing to determine whether [sex offenders] are likely to be "currently dangerous" ' before requiring them to register. *Id.* at 4. The Court noted that Connecticut's sex offender registration system 'turn[ed] on an offender's conviction alone−a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest.' *Id.* at 7. Because the defendant's current dangerousness was 'of no consequence' under Connecticut law, individuals were not entitled to a hearing to prove something that had no relevance to their registration. *Id.* ***
>
> [The] [Illinois appellate] court has adopted the rationale of *Connecticut Department of Public Safety* when faced with arguments that sex offenders in Illinois should have an opportunity to show whether they are likely to reoffend.

20

*People v. Stanley*, 369 Ill. App. 3d 441, 448-50 (2006); *In re J.R.*, 341 Ill. App. 3d 784, 795-96 (2003). That is because Illinois's system, like Connecticut's, is based entirely on the offense for which a sex offender has been convicted. A sex offender's likelihood to reoffend is not relevant to that assessment. As the Court held in *Connecticut Department of Public Safety*, defendant had no right to a procedure where he could prove a fact that had no relevance to his registration."

¶ 48 The defendant is required to register under the SORA Statutory Scheme as a result of his conviction. The defendant was given important procedural safeguards applicable to the criminal proceeding leading to his conviction, before he became subject to the SORA Statutory Scheme, including the right to notice, the right to counsel, the right to a jury trial, the right to confront witnesses, the privilege against self-incrimination, and the standard of proof beyond a reasonable doubt. See *Konetski*, 233 Ill. 2d at 201-02. Given these circumstances, we find that the defendant's obligations are not sufficiently burdensome to mandate the additional procedural protection of a mechanism to determine his risk of recidivism. Accordingly, the defendant has failed to carry his burden to clearly establish that the SORA Statutory Scheme violates his constitutional right to procedural due process. See *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 92.

¶ 49                      C. Eighth Amendment/Proportionate Penalties

¶ 50 The defendant argues that the SORA Statutory Scheme violates the proportionate penalties guarantees of the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). The eighth amendment states that "[e]xcessive bail shall not be

21

required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. The United States Supreme Court has held that the eighth amendment encompasses a "narrow proportionality principle" that prohibits "extreme sentences" that are "grossly disproportionate" to the crime. (Internal quotation marks omitted.) *Graham v. Florida*, 560 U.S. 48, 59-60 (2010).

¶ 51    The proportionate penalties clause found in article I, section 11, of the Illinois Constitution states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The proportionate penalties clause prohibits, *inter alia*, criminal penalties that are "cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community." (Internal quotation marks omitted.) *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). When interpreting this restriction, our supreme court has held that the proportionate penalties clause is coextensive with the eighth amendment's proportionality requirement. *People v. Patterson*, 2014 IL 115102, ¶ 106. We therefore analyze the defendant's eighth amendment and proportionate penalties arguments by the same standards. See *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 55.

¶ 52    "Both provisions apply only to the criminal process where the government takes direct action to inflict punishment." *Konetski*, 233 Ill. 2d at 207. The United States Supreme Court and the Illinois Supreme Court have held that sex offender registration and notification requirements do not constitute punishment. *Smith*, 538 U.S. at 105-06 (Alaska's sex offender registration and notification requirements not punitive); *Konetski*,

233 Ill. 2d at 207 (sex offender registration requirements not punishment); *Cornelius*, 213 Ill. 2d at 206-07 (widespread dissemination of offenders' information on Internet did not render sex offender notification provisions punitive); *J.W.*, 204 Ill. 2d at 75 (sex offender registration requirements not punitive); *Malchow*, 193 Ill. 2d at 424 (sex offender registration and notification not punitive).

¶ 53 The defendant acknowledges the binding precedent finding sex offender registration and notification provisions nonpunitive. The defendant argues, however, that the current SORA Statutory Scheme is more onerous than the previous legislation and that the prior statutory scheme addressed in the prior cases no longer exists. The defendant argues that the 2013 amendments to the SORA Statutory Scheme expand who must register as a sex offender, expand the number of agencies with which a registrant must register in person, reduce the time period to register, and require registration of travel plans, registration of workplace, and registration with the public safety or security director of any higher education institution where employed or attending. 730 ILCS 150/1 *et seq.* (West 1998); 730 ILCS 150/1 *et seq.* (West 2014). The defendant contends that the SORA Statutory Scheme has become punitive because it also expands the quantity of information a registrant must provide when registering, increases the length of time most registrants are required to register, and increases the initial and annual registration fees. *Id.* The defendant further notes that the current SORA Statutory Scheme punishes noncompliance more severely. 730 ILCS 150/10 (West 1998); 730 ILCS 150/10 (West 2014).

23

¶ 54   The defendant argues that the requirements constitute affirmative disabilities and restraints similar to probation or mandatory supervised release, warranting a finding that they are punitive.  The defendant requests this court to reevaluate the current SORA Statutory Scheme and determine that the SORA Statutory Scheme has evolved and transformed from a regulatory scheme into a punitive regime that violates the proportionate penalties provisions in the United States and Illinois Constitutions.

¶ 55   The defendant in *Avila-Briones*, 2015 IL App (1st) 132221, made similar arguments.  The court in *Avila-Briones*, however, declined to revisit the issue of whether the SORA Statutory Scheme constituted punishment because, even assuming that it did, it did not violate the eighth amendment or the proportionate penalties clause.  *Id.* ¶ 51.  We follow the same reasoning.

¶ 56   The defendant asserts his proportionality claims by arguing that the SORA Statutory Scheme, as applied to offenders who can show they are no risk to the public, is disproportionate.    Thus, the defendant argues that the challenged punishment is disproportionate to the crime in his particular case.  See *Graham*, 560 U.S. at 59-61; *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 56.  We find that it is not.

¶ 57   The defendant in this case was 50 years old when he committed an act of sexual penetration with a minor female who was 5 years old when the act was committed.  The Illinois Supreme Court has held that protecting children is "a government objective of surpassing importance" (internal quotation marks omitted) and that children suffer psychological damage as a result of sexual assault that "may be even more pernicious" than physical damage.  *People v. Huddleston*, 212 Ill. 2d 107, 132, 135 (2004); see also

*Avila-Briones*, 2015 IL App (1st) 132221, ¶ 60.  Further, "lifetime monitoring of sex offenders serves legitimate penological goals."  *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 61; see also *Smith*, 538 U.S. at 103 (state could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism).  The defendant's registration as a sex offender and prohibitions regarding his residence, employment, and presence focus on keeping child sex offenders, such as the defendant, away from children and diminishing the likelihood that they will repeat their crimes.  See *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 61.

¶ 58    "Furthermore, the United States Supreme Court has held that lifelong terms of incarceration do not violate the eighth amendment, even when the offender has been convicted of offenses that are minor compared to having sex with a minor."  *Id.* ¶ 66 (citing *Ewing v. California*, 538 U.S. 11, 28-31 (2003) (25 years to life for stealing three golf clubs); *Harmelin v. Michigan*, 501 U.S. 957, 994-96 (1991) (life without parole for possessing 672 grams of cocaine); and *Rummel v. Estelle*, 445 U.S. 263, 275-85 (1980) (life sentence for stealing $120 under false pretenses)).  Although the defendant will be monitored and constrained by the limits on his freedom for the rest of his life, assuming that the prohibitions and requirements of the SORA Statutory Scheme are punishment, they are punishment far less severe than prison.  See *id.* (citing *United States v. Williams*, 636 F.3d 1229, 1232 (9th Cir. 2011), *United States v. Bridges*, 760 F.2d 151, 154 (7th Cir. 1985), and *United States v. Walden*, 578 F.2d 966, 972 (3d Cir. 1978)).

¶ 59    Thus, we conclude that, even if the SORA Statutory Scheme were considered a system of "punishment," it is not grossly disproportionate to the defendant's offense.  We

therefore reject the defendant's claims that the SORA Statutory Scheme violates the eighth amendment or the proportionate penalties clause of the Illinois Constitution. See *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 67.

¶ 60                                IV.  CONCLUSION

¶ 61  For the reasons stated, we affirm the defendant's conviction and sentence. The SORA Statutory Scheme does not infringe on the defendant's fundamental rights under the substantive due process clause, is rationally related to the goal of protecting the public, and does not violate the procedural due process clause by failing to give the defendant a hearing on his likelihood to reoffend. Even if the SORA Statutory Scheme constituted "punishment," it is not a grossly disproportionate punishment for the defendant's crime.

¶ 62  Affirmed.

2016 IL App (5th) 130514

NO. 5-13-0514

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 12-CF-965 |
| | ) | |
| CEDRIC POLLARD, | ) | Honorable |
| | ) | John Baricevic, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Opinion Filed:**          May 10, 2016
_____

**Justices:**          Honorable S. Gene Schwarm, P.J.

                       Honorable Melissa A. Chapman, J., and
                       Honorable Bruce D. Stewart, J.,
                       Concur

_____

**Attorneys**     Michael J. Pelletier, State Appellate Defender, Patricia Mysza,
**for**           Deputy Defender, Joshua M. Bernstein, Assistant Appellate
**Appellant**     Defender, Office of the State Appellate Defender, First Judicial
                  District, 203 North LaSalle, 24th Floor, Chicago, IL 60601

_____

**Attorneys**     Hon. Brendan F. Kelly, State's Attorney, St. Clair County Courthouse,
**for**           10 Public Square, Belleville, IL 62220; Patrick Delfino, Director,
**Appellee**      Stephen E. Norris, Deputy Director, Kelly M. Stacey, Staff Attorney,
                  Office of the State's Attorneys Appellate Prosecutor, 730 East Illinois
                  Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

_____