2019 IL App (1st) 170117-U

FOURTH DIVISION
December 12, 2019

No. 1-17-0117

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 0919801 |
| | ) | |
| ALTON GUY, | ) | Honorable |
| | ) | William G. Lacy, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's bench-trial conviction of failing to register as a sex offender because we find that the current sexual offender registration requirements and restrictions do not violate substantive or procedural due process protections.

¶ 2    Defendant appeals his bench-trial conviction for failing to register as a sex offender as required by the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2012)). On appeal, defendant argues that SORA violates substantive and procedural due process. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged with two counts of failing to register as a sex offender in violation of SORA. 730 ILCS 150/3(a) (West 2012). In count I, the State alleged that from December 30, 2014, to May 19, 2015, defendant failed to report in person to the Chicago Police Department (CPD) within three days of establishing residence or temporary domicile in Chicago. In count II, the State alleged that from December 30, 2014, to May 19, 2015, defendant failed to report in person to the CPD within three days of being discharged from the Illinois Department of Corrections (IDOC).

¶ 5        At defendant's bench trial, Sharon Pierce, a correctional counselor at Lawrence Correctional Center, testified that on December 24, 2014, she gave defendant his incarceration release documents, including Illinois State Police sex offender registration forms. Pierce completed defendant's registration form; defendant provided an address on South Lowe Avenue in Chicago as the address he claimed he was going to be discharged to. Pierce reviewed with defendant his registration requirements and defendant placed his initials near each paragraph on the form. Pierce informed defendant that he was required to register within three days of his release from prison. Defendant was discharged from prison on December 26, 2014; he therefore had a duty to register by December 29, 2014.

¶ 6        The parties stipulated that if called to testify, Chicago police detective McGovern[1] would testify that he observed defendant come into the Criminal Registration Unit (CRU), which handles offender registration, on January 16, 2015, and attempt to register. Defendant possessed an identification card that listed an address on South Lowe Avenue in Chicago and defendant stated that he was going to reside at that location. The card was issued on January 2, 2015.

_____
[1] No first name was provided.

McGovern turned defendant away because the address on South Lowe Avenue was within 500 feet of a playground; defendant stated that he would return with a different address. The parties also stipulated that the Lowe address was within 500 feet of a playground. The parties stipulated that defendant had a duty to register for life due to a prior conviction for aggravated criminal sexual abuse in Case Number 01 CR 0876101. Defendant had also been previously convicted of failure to register in case numbers 10 CR 1324901 and 12 CR 1379401.

¶ 7        Chicago Police Department detective Crystal Nix testified that she was assigned to the CRU and defendant came to the CRU on April 24, 2015, and attempted to register as a sex offender. However, the address listed on defendant's identification, on South Lowe Avenue, was within 500 feet of a playground and consequently could not be registered. Defendant also did not have the required $100 fee for registration. Defendant indicated he would have difficulty paying the fee, so Nix gave him a waiver application. Defendant indicated that he was actively looking for shelter. The CRU registration log contained an entry reflecting that defendant was turned away due to lack of a fee and an improper address.

¶ 8        The parties stipulated that on May 20, 2015, an officer observed defendant at the address on Lowe Avenue in Chicago and arrested him.

¶ 9        Eric Guy, defendant's brother, testified for the defense. Eric testified that defendant came to his home after release from the penitentiary early in the morning of December 26, 2014, and informed Eric that he had to register right away, otherwise "they are going to take me back." Eric drove defendant to the police station at 9 a.m. that day. An officer in the parking lot indicated that the registration unit was closed that day. Defendant tried the police station door, but it was locked. Eric testified that he again drove defendant to the CRU on December 29, 2014, a Monday. Eric testified that an officer inside the station asked defendant for identification.

Defendant showed the officer his prison discharge papers and his IDOC identification, but the officer replied that he could not use these. Eric testified that defendant was consequently unable to register on December 29 and he was not able to sign the logbook. Eric testified that he took defendant to obtain a state identification on January 2, 2015. Eric testified on cross-examination that defendant did not return to the CRU between December 30, 2014, and January 5, 2015. As far as Eric knew, defendant next went to the CRU to try to register on January 16, 2015, when their sister took defendant.

¶ 10　　　The trial court found defendant not guilty on count I because the State failed to prove that defendant ever established a residence at the South Lowe address. The trial court found defendant guilty of count II for failing to register within three days of his release from prison. 730 ILCS 150/3(c)(4) (West 2012). The trial court found that defendant failed to report "for a number of days" after he was discharged from prison until he tried to register, and then more time passed before he was ultimately arrested.

¶ 11　　　The trial court sentenced defendant to 3 ½ years' imprisonment. Defendant filed a timely appeal.

¶ 12　　　　　　　　　　　　　II. ANALYSIS

¶ 13　　　　　　　　　　　A. Substantive Due Process

Defendant first argues on appeal that the current version of SORA and the Sex Offender Community Notification Law (Notification Law) (730 ILCS 152/101 *et seq.* (West 2012)) (together, the SORA statutory scheme), are facially unconstitutional because they violate substantive due process.

¶ 14　　　We review challenges to the constitutionality of a statute *de novo*. *People v. Mosley*, 2015 IL 115872, ¶ 22. We presume a statute is constitutional and a defendant must overcome this

strong presumption by clearly establishing its invalidity. *Id.* We resolve any doubts about a statute's constitutionality in favor of its validity and we must affirm a statute in the face of a constitutional challenge so long as it is " 'reasonably capable of such a determination.' " *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 20 (quoting *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20).

¶ 15     "Substantive due process bars the government from arbitrarily exercising its power without the reasonable justification of serving a legitimate interest." *People v. Pollard*, 2016 IL App (5th) 130514, ¶ 31 (citing *Daniels v. Williams,* 474 U.S. 327, 331 (1986)). In determining whether a statute violates due process, we must first " 'determine the nature of the right purportedly infringed upon by the statute.' " *Id.* (quoting *In re J.W.,* 204 Ill. 2d 50, 66 (2003)). If a fundamental constitutional right is involved, we employ strict scrutiny analysis to determine if the statute serves a compelling government interest and is narrowly tailored to serve that interest. *Id.* ¶ 32 (citing *People v. Cornelius*, 213 Ill. 2d 178, 204 (2004)).

¶ 16     Defendant contends that the SORA statutory scheme impacts two fundamental rights and thus is subject to strict scrutiny analysis: (1) his right to be free from bodily restraint based on arbitrary government action in that he must register within three days of his release from prison, anytime he is away from home for three days or more, or changes job, residences, phone numbers, or email addresses, and he cannot enter or be within 500 feet of all parks and many types of public buildings, and (2) his fundamental right to privacy in requiring the public disclosure of private information.[2]

_____

    [2] We observe that SORA imposes registration requirements on convicted sexual offenders to register their address with and provide other information to law enforcement within three days of release from prison, when temporarily domiciled at a different address for a least three days, and at other intervals, and to pay $100 fee; failure to do so constitutes a felony. *People v. Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 11-14 (citing 730 ILCS 150/3(a), 150/6, 150/7, 150/10 (West 2012)). The Notification Law requires law enforcement to disclose "sex offenders' names, addresses, dates of birth, places of

¶ 17     We observe that our supreme court has repeatedly held that the SORA statutory scheme does not affect fundamental rights triggering strict scrutiny analysis. See *In re J.W.*, 204 Ill. 2d 50, 66 (2003) (lifetime registration requirement for juveniles does not impact a fundamental right); *Cornelius*, 213 Ill. 2d at 204 (no fundamental right or unconstitutional invasion of privacy were implicated by the Internet dissemination provisions); *People v. Malchow,* 193 Ill. 2d 413, 425-26 (2000) (SORA statutory scheme does not violate right to privacy).

¶ 18     Defendant contends that these cases involved prior versions of the SORA statutory scheme that were much more limited in scope and pre-date the pervasiveness of the Internet and social media today. However, multiple recent decisions from Illinois courts have concluded that the requirements and restrictions of the current SORA statutory scheme do not impact a fundamental right. See *People v. Rodriguez,* 2019 IL App (1st) 151938-B, ¶ 30 (SORA does not violate fundamental right to be free from punishment); *People v. Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 73-76 (SORA statutory scheme does not impact fundamental rights or violate right to privacy); *People v. Lee*, 2018 IL App (1st) 152522, ¶ 49 (lifetime registration requirement and other restrictions do not implicate a fundamental right); *People v. Parker*, 2016 IL App (1st) 141597, ¶¶ 78-82 (SORA statutory scheme's monitoring requirement and restrictions do not violate a fundamental right); *In re A.C.*, 2016 IL App (1st) 153047, ¶¶ 35-66 (SORA statutory scheme does not implicate a fundamental right and juvenile's right to privacy is not violated by SORA's requirements).

¶ 19     Accordingly, defendant's arguments are foreclosed by these prior decisions. "[T]he weight of authority shows that laws similar to the Statutory Scheme do not affect fundamental

---

employment, schools, email addresses, instant messaging identities, chat room identities, and 'other Internet communications identities' " to various institutions, individuals, and entities, and maintain a website containing sex offender information available to the public. *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 15-16 (citing 730 ILCS 152/120, 152/115(b) (West 2012)).

rights. Our supreme court has stated that SORA does not affect fundamental rights." *Avila-Briones,* 2015 IL App (1st) 132221, ¶ 74. As Illinois courts have repeatedly recognized when examining constitutional challenges to the SORA statutory scheme, the category of "fundamental rights" is a narrow one, and "[o]ur supreme court has held that sex offender registration provisions do not affect fundamental rights." *Pollard*, 2016 IL App (5th) 130514, ¶35. We agree that these burdens and restrictions, while not insignificant, simply do not rise to the level of infringement on a fundamental right.

¶ 20　　　Defendant also urges that the restrictions and obligations of the SORA statutory scheme constitutes a perpetual limitation on his liberty, citing *Weems v. U.S.*, 217 U.S. 349, 366 (1910), in which the United States Supreme Court found that a 15-year sentence and lifetime limitation on an individual's freedom of movement constituted cruel and unusual punishment. However, as we observed in *Avila-Briones*, reliance on *Weems* is inapposite as it "did not involve a fundamental-rights analysis under the substantive due process clause. Instead, it involved an eighth-amendment challenge to a criminal sentence." *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 79. *Weems* also "involved a system of punishment far more harsh and intrusive than defendant's obligations as a sex offender" as the defendant in *Weems* was required to obtain the authorities' permission before moving. *Id.*

¶ 21　　　Defendant next asserts that even if a fundamental right is not at play, the SORA statutory scheme violates substantive due process under rational basis review.

¶ 22　　　"The rational basis test is satisfied where the challenged statute bears a rational relationship to the purpose the legislature intended to achieve in enacting the statute." *Cornelius*, 213 Ill. 2d at 203-04.

¶ 23    While defendant acknowledges that the State has a legitimate interest in protecting the public, particularly children, from sex offenders, defendant asserts that the SORA statutory scheme is not rationally related to this purpose. Defendant cites a December 2017 report by a Sex Offender Registration Task Force of the General Assembly stating that research has not established that a sex offender registry reduces the sexual crime rate or reduces sexual recidivism, and that the current SORA statutory scheme prevents all sex offenders from re-entering society, regardless of whether they are high risk offenders. Defendant further argues that alternate means are available for achieving the State's purpose, that is, implementing a risk assessment and a mechanism for removal from the registry.

¶ 24    We observe that our courts have repeatedly held that SORA's provisions do not violate substantive due process under rational basis review. See *In re J.W.*, 204 Ill. 2d at 66-72 (registration requirement for juveniles does not violate substantive due process under rational basis test); *Cornelius*, 213 Ill. 2d at 204 (Internet dissemination provisions are rationally related to state purpose of protecting public from sex offenders and assisting law enforcement); *Rodriguez*, 2018 IL App (1st) 151938-B, ¶¶ 30-35 (SORA is rationally related to legitimate government interest of protecting public from sex offenders); *Parker*, 2016 IL App (1st) 141597, ¶¶ 78-82 (SORA statutory scheme does not violate due process) *In re A.C.*, 2016 IL App (1st) 153047, ¶¶ 35-57 (application of registration and notification requirements to a juvenile offender was rationally related to a legitimate state interest); *Avila-Briones,* 2015 IL App (1st) 132221, ¶ 81-86 (SORA statutory scheme is a rational means of protecting the public from sex offenders and does not violate substantive due process under rational basis standard); *In re J.R.*, 341 Ill. App. 3d 784, 792-94 (2003) (SORA statutory scheme requirements applied to a juvenile do not violate substantive due process under rational basis test).

¶ 25    Despite defendant's assertions that a legislative task force report has questioned the efficacy of SORA and that other means are available to accomplish the State's purposes, we nevertheless conclude that it is rationally related to a legitimate government purpose. "[I]t is well settled that the rational basis test does not require that the statute be the best means of accomplishing the legislature's objectives. [Citation.] As long as the legislation has a rational relationship to the government objectives, it is valid even if it is to some extent overinclusive, underinclusive, or both." (Internal quotation marks omitted) *Pollard,* 2016 IL App (5th) 130514, ¶ 42 (finding that, although SORA may be over-inclusive, it was still rationally related to protection of the public from sex offenders).

¶ 26    In *Parker*, for example, the defendant similarly cited "studies showing that most sex offenders do not recidivate." *Parker*, 2016 IL App (1st) 141597, ¶ 79. However, the *Parker* court observed that "[w]hile not every offender is necessarily inclined to commit another sex offense, subjecting that group as a whole to certain restrictions does serve a legitimate state purpose which the SORA Statutory Scheme is rationally related to achieving, even though it may not be 'finely-tuned' to do so." *Id.* (quoting *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 84).

¶ 27    Similarly, *In re A.C.*, 2016 IL App (1st) 153047, ¶¶ 50-52, this court rejected the defendant's rational basis challenge based on a report finding that the SORA statutory scheme did not bear a rational relationship to its purpose because it was over-inclusive and counterproductive to rehabilitation of juveniles. The court held that it was bound by Illinois precedent finding the SORA statutory scheme constitutional and reasoned that "policy arguments more properly belong to the province of the legislature." *Id.* ¶ 52.

¶ 28    Along the same lines, the court in *Avila-Briones* observed that "[a]lthough we recognize that the Statutory Scheme at issue may be over-inclusive—that is, it may impose burdens on

individuals who pose no threat to the public because they will not reoffend—it still has a rational relationship to protecting the public." *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 84. The *Avila-Briones* court noted that our supreme court has held that the SORA statutory scheme "help[s] law enforcement and private individuals keep track of sex offenders by providing information about their presence and offenses" and keep sex offenders away from areas or out of professions where children or other vulnerable people are present. *Id.* "Whether or not the Statutory Scheme is a finely-tuned response to the threat of sex-offender recidivism is not a question for rational-basis review; that is a question for the legislature." *Id.* See also *Rodriguez*, 2019 IL App (1st) 151938-B, ¶¶ 32-33 ("despite being in certain ways under- or overinclusive, the SORA statutory scheme is rationally related to protecting the public from sex offenders, which is a legitimate state interest" and the SORA statutory scheme enabled law enforcement to monitor the whereabouts of sex offenders which "rationally limited the opportunities sex offenders have to reoffend.").

¶ 29                              B. Procedural Due Process

¶ 30        Defendant next contends that the SORA statutory scheme violates his procedural due process guarantees because there is no opportunity afforded for individualized assessment prior to subjecting him to a lifetime of registration requirements, nor is there a mechanism to petition for removal from the registry.

¶ 31        "The procedural due process clause entitles individuals to certain procedures before the State may deprive them of a life, liberty, or property interest." *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 88. In determining how much process is required, courts consider three factors: "(1) the private interest that will be affected by the government action; (2) the risk of an erroneous deprivation of that private interest through the procedures used and the probable value of

additional procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional procedures would entail." *Id.* (citing *People ex rel. Birkett v. Konetski,* 233 Ill. 2d 185, 201 (2009)).

¶ 32        Defendant contends that all three factors favor additional procedures. He contends that the private interests at stake are the freedom from intrusive monitoring and surveillance, his right to privacy, and the right to notice and an opportunity to be heard where his reputation is at stake. Defendant contends that there is a risk of erroneous deprivation of these interests as evidenced by the fact that he is in poor health and confined to a wheelchair and his only recent criminal activity has resulted from his difficulties in registering. He asserts that additional procedural safeguards would ensure state resources are not wasted and the additional costs would be minimal if the length of registration is determined by the trial court at the time of sentencing.

¶ 33        In *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 90, this court rejected a similar procedural due process challenge. The defendant asserted that the SORA statutory scheme lacked a mechanism to ensure only those offenders who actually pose a risk of recidivism are subjected to its restrictions. *Id.* The *Avila-Briones* court concluded that no additional procedures are needed to comport with due process as application of SORA was based on the convicted offense, for which the offender received "a procedurally safeguarded opportunity to contest"; thus, a defendant's likelihood of recidivism is irrelevant in determining whether he committed the charged offense. (Internal quotation marks omitted.) *Id.* ¶¶ 88-92 (citing *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 4, 7-8 (2003)).

¶ 34        This court has reaffirmed this holding in subsequent cases. In *Parker*, 2016 IL App (1st) 141597, ¶ 82, the court again rejected a procedural due process challenge, holding that "once it has been determined that the SORA Statutory Scheme is not unconstitutional, there is no

constitutional mandate for procedures that would allow a convicted defendant to demonstrate that he or she is not likely to reoffend." Similarly, the court in *In re A.C.*, 2016 IL App (1st) 153047, ¶¶ 59-66, observed that Illinois precedent holds that SORA's restrictions and requirements "do not implicate protected liberty or property interests," and the court found that imposing registration requirements without an individualized determination of risk did not violate the juvenile offender's procedural due process rights. See also *Konetski*, 233 Ill. 2d at 200-06 (SORA registration obligations did not violate juvenile offender's procedural due process rights and additional procedural safeguard of a trial was not required); *In re J.R.,* 341 Ill. App. 3d at 795-800 (finding that juvenile's procedural due process rights were not violated by imposing registration requirement without initial individualized determination of current dangerousness as registration requirement was triggered upon adjudication for a specified offense and current dangerousness was not relevant to registration obligation); *Pollard*, 2016 IL App (5th) 130514, ¶¶ 46-48 (no procedural due process violation where defendant enjoyed several procedural safeguards associated with his criminal proceedings and the registration obligations were "not sufficiently burdensome to mandate the additional procedural protection of a mechanism to determine his risk of recidivism.")

¶ 35    Additionally, as the State contends, whether the value of additional procedures would better serve the State's interest in public safety is a matter best left for the legislature. " '[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' " *In re A.C.*, 2016 IL App (1st) 153047, ¶ 66 (quoting *In re M.A.,* 2015 IL 118049, ¶ 70). " 'A statute is not invalid under the Constitution because it might have gone farther than it did.' " *Id.* (quoting *In re M.A.,* 2015 IL 118049, ¶ 70).

¶ 36   Accordingly, we find that defendant has failed to show that any additional process is constitutionally mandated or that the SORA statutory scheme violates procedural due process rights.

¶ 37           III. CONCLUSION

¶ 38   For the reasons set forth above, we affirm the judgment of the court.

¶ 39   Affirmed.