2016 IL App (1st) 153047

FIFTH DIVISION
May 18, 2016

No. 1-15-3047

| | | |
|---|---|---|
| *In re* A.C., a Minor | ) | |
| | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 14 JD 1155 |
| v. | ) | |
| | ) | Honorable |
| A.C., | ) | Cynthia Ramirez, |
| | ) | Judge Presiding. |
| Respondent-Appellant). | ) | |
| | ) | |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Presiding Justice Reyes concurred in the judgment and opinion.
Justice Gordon concurred in part and dissented in part, with opinion.


**OPINION**

¶1     Following a hearing in Juvenile Court, the circuit court adjudicated respondent, A.C., delinquent of aggravated criminal sexual abuse and he was ordered to register under the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2014)). Respondent appeals, contending that the provisions of SORA and the Sex Offender Community Notification Law (Notification Law) (730 ILCS 152/101 *et seq.* (West 2014)) which are applicable to juveniles, violate federal and state substantive due process and procedural due process.  In addition, respondent contends that both of these statutes violate the prohibition against cruel and unusual punishment under the eighth amendment and the proportionate penalties clause of the federal

constitution. This court subsequently allowed the Children & Family Justice Center of the Bluhm Legal Clinic at Northwestern University School of Law[1] and the Juvenile Law Center to file a joint *amicus curiae* brief on behalf of A.C.[2]

¶2                                          I. BACKGROUND

¶3      On May 11, 2013, the date the incident occurred, respondent was 16 years of age and K.J. was 8 years of age. The State filed a petition for adjudication of wardship on March 31, 2014, against respondent for aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(2)(i) (West 2014)) against K.J.

¶4      At the adjudicatory hearing, K.J. testified that on the evening of May 11, 2013, she was at her home in Chicago with her two half-brothers and one of the half-brother's grandmother, D.W. Respondent and a few friends of her half-brother's came over that evening to spend the night. Respondent was best friends with one of K.J.'s half-brothers and K.J. had seen him before. The friends went into the basement and K.J. went to her room upstairs and watched television for a few hours. She fell asleep in her bed wearing shorts and a T-shirt. K.J. awoke at 1 or 2 a.m.; the plastic on her mattress was moving. She was on her stomach and her shorts and underwear were pulled down under her buttocks. K.J. testified that she felt respondent going up and down on her from behind. After he stood up, he told K.J. that she had "white stuff" on her. He went to the bathroom across the hall and obtained a tissue and used it to wipe the "clear stuff" or "clear crust" off of her and then he threw it in the bathroom trash and returned downstairs. K.J. woke up D.W. and told her what happened.

¶5      D. W. testified that around 2 a.m., K.J. asked if she could sleep with her and climbed into

---

[1] The school of law has been renamed to Northwestern Pritzker School of Law.
[2] The full list of *amici* includes Cabrini Green Legal Aid, Civitas ChildLaw Center, Illinois Juvenile Justice Commission, James B. Moran Center for Youth Advocacy, John Howard Association of Illinois, Juvenile Justice Initiative, and the Law Office of the Cook County Public Defender.

bed.[3] K.J. then asked if she could tell D.W. something. K.J. stated, "that boy A*** was freaking on me" and that "the bed was moving." K.J. stated that respondent used a tissue on "some white stuff." D.W. testified that K.J. was crying and shaking.

¶6    K.J-H., K.J.'s mother, testified that D.W. was watching the three children while she was away that weekend. When K.J-H. returned on May 13, 2013, she spoke with K.J. and then retrieved a tissue from the garbage in the upstairs bathroom, which she placed in a paper bag. She also retrieved K.J.'s pajamas, underwear, and the sheets from K.J.'s bed, and placed these items in two paper bags. She took K.J. to the Lurie Children's Hospital, where a criminal sexual assault kit examination was performed. Chicago police evidence technician Carla Rodriguez subsequently retrieved the bagged items from K.J-H.'s home on May 14, 2013, and inventoried and secured them for DNA testing.

¶7    Illinois State Police forensic biologist Jennifer Wagenmaker testified that she received the inventoried items and identified semen on the toilet paper and two semen stains on the underwear, of which she prepared cuttings and stored for later DNA testing. She did the same for the blood samples collected from respondent and K.J.

¶8    Lisa Kell, Illinois State Police forensic biologist and DNA analyst, analyzed and compared the DNA profiles from the various samples. She testified that the DNA profile on the toilet paper matched respondent. Kell also identified respondent's DNA in a semen stain on the back of the underwear. The stain from the crotch area of the underwear matched K.J.'s DNA profile.

¶9    Chicago police sergeant Athena Mullen interviewed respondent with his mother present on November 26, 2013, at the police station. Following his acknowledgement of his *Miranda*

---

[3] The court admitted K.J.'s statements to D.W. pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2012)).

warnings, respondent told Mullen that "he didn't penetrate that girl." When Mullen asked what respondent meant, "[l]ike a hotdog in a bun?" Respondent stated, "[s]omething like that." Respondent stated that the girl had been lying on her stomach. The interview was terminated at that point and respondent told Mullen that he wanted to obtain some help.

¶10    Following closing arguments, the circuit court held that the State proved respondent committed aggravated criminal sexual abuse and entered a finding of delinquency.

¶11    On August 10, 2015, respondent filed a motion to declare SORA and the Notification Law unconstitutional as applied to him. Following a hearing, the circuit court denied respondent's motion.

¶12    The record reflects that respondent underwent a forensic psychological evaluation by Dr. Michael Fogel in October 2014 to assess respondent's risk for sexually reoffending. Based on this assessment, Dr. Fogel opined that respondent was at a low risk of sexually reoffending. In addition, probation officer Claire Johnson was assigned to perform a juvenile sex offender evaluation. Johnson's letter to the court dated June 29, 2015, indicated that she reviewed Dr. Fogel's evaluation and interviewed respondent and his mother, and opined that respondent was at a low risk to sexually reoffend and that sex offender registration could have an aggravating effect on his risk level as it could have consequences related to respondent's pursuit of higher education. A social investigation and supplemental social investigation of respondent also occurred.

¶13    At the dispositional hearing on October 9, 2015, the circuit court sentenced respondent to three years' probation, 50 hours of community service, and juvenile sex offender counseling. Respondent registered as a sex offender on October 9, 2015. This appeal followed.

¶14                        II. ANALYSIS

¶15                    A. Statutory Provisions

¶16    On appeal, defendant challenges the constitutionality of the following provisions of SORA and the Notification Law: 730 ILCS 150/2, 3, 3-5, 6, 8, and 10 (West 2014); 730 ILCS 152/121 (West 2014).

¶17    Respondent's adjudication for aggravated criminal sexual abuse qualifies him a "sexual offender" under SORA. 730 ILCS 150/2(A)(5), (B)(1) (West 2014); 720 ILCS 5/11-1.60(c)(2)(i) (West 2014). Respondent also falls within the more specific definition of a "sexual predator" under SORA, which includes "any person who, after July 1, 1999, is: *** Convicted of a violation or attempted violation of *** 11-1.60 or 12-16 (aggravated criminal sexual abuse)." 730 ILCS 150/2(E)(1) (West 2014).

¶18    Section 3 requires sexual offenders to register with the chief of police in the municipality where he resides, providing appropriate identification and proof of residence, in addition to other information such as telephone number, e-mail addresses, and Internet communications identities, and he also must pay a registration fee. 730 ILCS 150/3(a)(1), (c)(5) (West 2014). If the sexual offender also attends a university, he must also register with the chief of police or sheriff where the school is located and the public safety or security director at the school. 730 ILCS 150/3(a)(i), (ii) (West 2014). Pursuant to section 7, a sexual offender must register for a period of 10 years after conviction or adjudication or, in the case of a sexual predator, for his or her natural life. 730 ILCS 150/7 (West 2014).

¶19    Section 3-5 applies these registration requirements to adjudicated delinquent juveniles. 730 ILCS 150/3-5(a), (b) (West 2014). For felonies, the juvenile may petition for termination of

registration after five years. 730 ILCS 150/3-5(c) (West 2014). At the hearing on the petition, the juvenile is represented by counsel and may present a risk assessment evaluation by a licensed evaluator. The court may terminate the registration requirement if it finds that the juvenile "poses no risk to the community by a preponderance of the evidence" based on several enumerated factors. 730 ILCS 150/3-5(d) (West 2014).

¶20    In addition, section 6 imposes a duty to report in person to the appropriate law enforcement agency every year, up to four times per year, and also requires a sexual offender to report in person and register within the time period specified in section 3 (three days) if there is a change of address, employment, telephone number, or school. 730 ILCS 150/6 (West 2014). Section 8 explains that registration entails providing a current photograph and a DNA specimen, and the registering law enforcement agency must forward the registration information to the Illinois State Police for entry into the Law Enforcement Agencies Data System (LEADS). 730 ILCS 150/8 (West 2014). Under the "penalty" provision in section 10, failure to comply with SORA constitutes a Class 3 felony for a first offense, and a Class 2 felony for subsequent violations. 730 ILCS 150/10 (West 2014).

¶21    Under the Notification Law, section 120 provides for liberal disclosure by law enforcement of a registrant's name, address, date of birth, place of employment, school, e-mail addresses, internet identities, and offense information to local schools, colleges, childcare centers, libraries, other social service or volunteer organizations providing services to minors and to sex offense victims. 730 ILCS 152/120 (West 2014). However, section 121 limits dissemination of information regarding adjudicated juvenile delinquents to those individuals whose "safety may be compromised for some reason" as determined by the local authority, and to the principal or chief administrative officer of the juvenile's school, and requires that the

registration information be kept separate from his other school records. 730 ILCS 152/121(a), (b) (West 2014).

¶22                                    B. Standing

¶23    Initially, we note that respondent merges individual provisions of SORA and the Notification Law together and refers to them as a single "2013 SORNA" statutory scheme for purposes of his constitutional challenges. However, as the State contends, these are two separate acts which work together to regulate sex offenders. The State argues that respondent lacks standing to challenge the constitutionality of section 10 (730 ILCS 150/10 (West 2014)), the penalty provision of SORA.[4]

¶24    We agree that respondent lacks standing to challenge section 10 of SORA because he is not suffering or in immediate danger of suffering a direct injury as a result of enforcement of this provision. *People v. Greco,* 204 Ill. 2d 400, 409 (2003). There is no allegation that respondent has failed to comply with his SORA registration requirements and is being charged with a felony. We distinguish our case from this court's recent decision in *People v. Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 30-32, where the court found that the defendant had standing to challenge the constitutionality of the residency, employment, presence, driver's license and name-change restrictions in SORA because he had "received punishment" in being convicted of a sex offense that automatically triggered application of these restrictions. In contrast, application of the "penalty" provision in section 10 is not automatically being applied here as it first requires that respondent fail to abide by the registration requirements, and then he must be charged with a violation and convicted after a trial.

¶25    However, even if we were to find that respondent had standing to challenge section 10,

---

[4] We note that the State does not challenge respondent's standing to challenge the remainder of the SORA and Notification Law provisions he highlights, which are directly applicable to him by virtue of his adjudication for aggravated criminal sexual abuse.

we would nevertheless conclude, as discussed further below, that his claims would fail on the merits.

¶26                              C. Standard of Review

¶27     Statutes enjoy a strong presumption of constitutionality. *People v. Mosley,* 2015 IL 115872, ¶ 22; *People v. Breedlove,* 213 Ill. 2d 509, 518 (2004). "To overcome this presumption, the party challenging the statute must clearly establish its invalidity." *Mosley*, 2015 IL 115872, ¶ 22. "A court will affirm the constitutionality of a statute or ordinance if it is 'reasonably capable of such a determination' and 'will resolve any doubt as to the statute's construction in favor of its validity.' " *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 20 (quoting *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20). This court reviews the constitutionality of a statute *de novo*. *Mosley*, 2015 IL 115872, ¶ 22.

¶28                      D. Facial and As-Applied Constitutional Challenges

¶29     On appeal, respondent raises both facial and as-applied challenges to various provisions of SORA and the Notification Law.

¶30     A facial challenge " 'is the most difficult challenge to mount successfully because an enactment is invalid on its face only if no set of circumstances exists under which it would be valid.' " *Jackson*, 2012 IL App (1st) 111044, ¶ 25 (quoting *One 1998 GMC,* 2011 IL 110236, ¶ 20). "If a statute can be validly applied in any situation, a facial challenge must fail." *In re Maurice D.,* 2015 IL App (4th) 130323, ¶ 22. In examining a facial challenge, the particular facts of a party's case are irrelevant. *Jackson*, 2012 IL App (1st) 111044, ¶ 27.

¶31     In contrast, an as-applied challenge requires a party to demonstrate that the statute is unconstitutional as applied in that party's particular circumstances, rending the party's factual context relevant. *Jackson*, 2012 IL App (1st) 111044, ¶ 26 (quoting *Napleton v. Village of*

*Hinsdale,* 229 Ill. 2d 296, 306 (2008). " '[I]f a plaintiff prevails in an as-applied claim, he may enjoin the objectionable enforcement of a statute only against himself ***.' " *Id.* ¶ 27 (quoting *Morr-Fitz, Inc. v. Blagojevich,* 231 Ill. 2d 474, 498 (2008)). If the court determines that a statute is constitutional as applied to a party, "a facial challenge will also fail, since there is necessarily at least one circumstance in which the statute or ordinance is constitutional." *Id.*

¶32    As the State observes, however, although respondent advances both facial and as-applied challenges on appeal, he presents essentially the same arguments in both challenges and relies largely on his own circumstances in arguing that the provisions are unconstitutional. As such, he fails to demonstrate that the challenged statutes are " 'unconstitutional under every circumstance.' " *Jackson*, 2012 IL App (1st) 111044, ¶ 25 (quoting *One 1998 GMC,* 2011 IL 110236, ¶ 58). Because a determination that the challenged statutes are "constitutional as applied to [respondent] would necessarily compel a finding that the statute[s] [are] constitutional on [their] face," we address respondent's as-applied claims. *In re M.A.,* 2015 IL 118049, ¶ 41.

¶33                              E. Substantive Due Process

¶34                                  i. Strict Scrutiny

¶35    Respondent seeks strict scrutiny review of the challenged statutes. He argues that they violate his fundamental right to liberty, privacy, pursue happiness, and reputation because the registration and notification provisions are complex and difficult to follow. They require disclosure to his school and those "at risk," without restricting subsequent disclosure. He contends that universities may rescind admission offers or financial aid, and other students or future employers may find out.

¶36    Both the federal and state constitutions provide that no individual shall be deprived of life, liberty, or property without the due process of law. U.S. Const., amend. XIV, § 1; Ill. Const.

1970, art. I, § 2. "[W]here the right infringed upon is among those rights considered 'fundamental' constitutional rights, the challenged statute is subject to strict scrutiny analysis." *People v. Cornelius*, 213 Ill. 2d 178, 204 (2004). "To survive strict scrutiny, the means employed by the legislature must be necessary to achieve a compelling state interest, and the statute must be narrowly tailored to accomplish this goal, *i.e.,* the legislature must employ the least restrictive means consistent with the attainment of the intended goal." *Id.*[5]

¶37    Initially, we must determine whether respondent's claim involves a fundamental right warranting strict scrutiny analysis. *Cornelius*, 213 Ill. 2d at 204. In so doing, we "exercise the utmost care," as a fundamental right is one that is "deeply rooted" in our nation's history and legal traditions. (Internal quotation marks omitted.) *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 72 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993), and *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997)).

¶38    We find respondent's contention that a fundamental interest is at stake here not to be persuasive. Respondent cites no controlling case law establishing that a "deeply rooted" fundamental right is violated by juveniles being subjected to the registration or notification provisions at issue. Indeed, our supreme court and this court have repeatedly held that SORA and the Notification Law do not implicate fundamental rights and have analyzed constitutional challenges under the rational basis standard. For example, in *Cornelius*, 213 Ill. 2d at 204, the defendant claimed that the Notification Law damaged his reputation and invaded his privacy, but our supreme court held that strict scrutiny did not apply because no fundamental right was implicated, and upheld the law under a rational basis review.

---

[5] Respondent does not assert that our state's due process clause should be construed independently of the federal due process clause, and we therefore "find no compelling reason to construe the state due process clause independently of its federal counterpart." *In re M.A.,* 2015 IL 118049, ¶ 53.

¶39     In the juvenile context, our supreme court in *In re J.W.,* 204 Ill. 2d 50, 67 (2003), observed with respect to a substantive due process challenge to SORA that the respondent "does not argue, nor do we find, that" SORA violated the juvenile respondent's substantive due process rights in requiring him to register as a sex offender, and it upheld the law under rational basis review. See also *People v. Adams*, 144 Ill. 2d 381, 390 (1991) (holding that SORA registration was reasonable and rationally related to the interest of protecting children); *People v. Malchow,* 193 Ill. 2d 413, 425-26 (2000) (finding that SORA and the Notification Law did not violate the state or federal right to privacy).

¶40     This court followed *In re J.W.* in ruling that "the supreme court first noted that the respondent did not argue, and it did not find, that the Registration Act affected a fundamental right." *In re J.R.,* 341 Ill. App. 3d 784, 792 (2003). Accordingly, the *In re J.R.* court did not apply strict scrutiny analysis to the juvenile respondent's substantive due process challenge to SORA and the Notification Law, and it upheld the laws under the rational basis standard. *Id.* at 792-94.

¶41     Similarly, in *In re T.C.*, 384 Ill. App. 3d 870, 874 (2008), the juvenile respondent argued the SORA deprived him of a protected liberty interest, where he was a "sexual predator" required to register for natural life. The court held that these provisions did not implicate a protected liberty interest as the respondent failed to show "how such registration requirements deprived him of his right to be free from physical restraints, to be free in the enjoyment of his faculties, and to live and work where he will," and he was therefore not entitled to the procedural safeguard of a jury trial on that issue. *Id.* at 874-75.

¶42     More recently, in *Avila-Briones*, the defendant challenged several provisions in SORA and the Notification Law on substantive due process grounds, and this court observed that "the

11

weight of authority shows that laws similar to the Statutory Scheme do not affect fundamental rights. Our supreme court has stated that SORA does not affect fundamental rights." *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 74 (citing *In re J.W.,* 204 Ill. 2d at 67). With respect to the Notification Law, this court observed that "our supreme court has held that Internet dissemination of sex offenders' personal information does not impact fundamental rights because the right to be free from the shame, stigma and embarrassment resulting from a conviction for sexually abusing a child is not the kind of fundamental right contemplated by our constitution." (Internal quotation marks omitted.) *Id.* (quoting *Cornelius,* 213 Ill. 2d at 204, and citing *Paul v. Davis,* 424 U.S. 693, 701 (1976) (holding that damage to reputation alone does not deprive individual of protected liberty or property interest). The court additionally concluded that "Illinois courts have rejected the notion that employment or residency restrictions on sex offenders violate their fundamental rights," and found the statutory provisions relating to driver's licenses, name changes, and "presence" restrictions on sex offenders did not implicate fundamental rights. *Id.* ¶ 75.[6]

¶43    Accordingly, in keeping with the binding precedential decisions of our supreme court, and in light of persuasive and on-point decisions from our appellate court, we reject respondent's argument that a fundamental right is at stake here. Strict scrutiny analysis is not appropriate. "It is well-settled that when our supreme court has declared law on any point, only [the supreme

---

[6] See also *People v. Logan*, 302 Ill. App. 3d 319, 332 (1998) (where the defendant argued that the registration and notification provisions violated his right to travel and that he suffered injury to his reputation because no preregistration hearing was required, the court held that the statutes did not violate a protected liberty, privacy, or property interest, that "[a]ny injury to the defendant's reputation is a result of his underlying conviction of a sex offense," and that the information disclosed was not within the constitutionally protected "zone of privacy" as it was already publicly available); *People v. Grochocki*, 343 Ill. App. 3d 664, 673 (2003) (damage to reputation via inclusion on the registry did not constitute deprivation of a liberty or property interest under the state or federal due process clause and "any stigma suffered by a sex offender stems from his own criminal acts, not from truthful and accurate compilation of public information"); *People v. Stork,* 305 Ill. App. 3d 714 (1999) (SORA's restrictions on presence of sex offenders in school zones did not implicate a protected liberty interest); *People v. Stanley,* 369 Ill. App. 3d 441, 449-50 (2006) (lifetime registration, designation as a "sexual predator," and public dissemination of offender information on the Internet did not affect a liberty or property interest in procedural due process claim).

court] can modify or overrule its previous decisions, and all lower courts are bound to follow supreme court precedent until such precedent is changed by the supreme court." *Rosewood Care Center, Inc. v. Caterpillar, Inc.,* 366 Ill. App. 3d 730, 734 (2006), *aff'd on other grounds,* 226 Ill. 2d 559 (2007).

¶44 We also reject respondent's claim that there is a heightened right of privacy for juvenile offenders embodied in the Juvenile Court Act of 1987 (705 ILCS 405/5-101 (West 2014)) which is violated by SORA and the Notification Law. The protection against "unreasonable" invasions of privacy does not include the right of a juvenile offender to remain completely anonymous. See *In re Lakisha M.*, 227 Ill. 2d 259, 270-73 (2008) (Illinois's mandatory DNA collection and indexing laws did not violate adjudicated delinquent juvenile's right to privacy even though the Juvenile Court Act contained provisions intended to protect a juvenile's identity); *In re J.R.*, 341 Ill. App. 2d at 793-94. Although one purpose of the Juvenile Court Act is to rehabilitate minors, we note that, with recent amendments, its purposes now also include protection of the community from juvenile crime and holding juvenile offenders accountable for their conduct. *In re T.C.*, 384 Ill. App. 3d at 877 (citing *In re J.W.*, 204 Ill. 2d at 69). "[O]ur supreme court has affirmatively found that SORA is appropriately applicable to juveniles as well as adults because the policy interests behind SORA are designed to protect the public, which is not at odds with the recently amended policy concerns of the Juvenile Court Act." *Id.* Moreover, regardless of any statutory privacy protections set forth in the Juvenile Court Act, "[s]tatutes do not confer constitutional rights." *In re M.A.,* 2015 IL 118049, ¶ 68. The cases cited by respondent do not establish a heightened *constitutional* right of privacy for juveniles.

¶45 Along the same lines, we also disagree with respondent's contention that the challenged provisions violate a right to happiness or reputation. His citation to *Wisconsin v. Constantineau*,

400 U.S. 433, 436-37 (1971), does not apply, as that case involved a procedural due process claim and the statute at issue, which permitted posting a sign prohibiting liquor stores from selling to individuals the sheriff deemed excessive drinkers, was unconstitutional as it provided for no notice or a hearing.

¶46    Respondent also attempts to establish that injury to reputation coupled with the loss of future or present employment may establish a due process violation, citing *Lyon v. Department of Children & Family Services,* 209 Ill. 2d 264, 273 (2004). However, respondent's claim of impairment to his educational interests and employment opportunities is speculative, unlike in *Lyon*, where the issue was whether listing an indicated report about a teacher on the Department of Children and Family Services central register violated due process where he lost two teaching positions after the report was posted. *Id.* at 273-74. Moreover, this court has determined that subjecting juveniles to registration does not impair the right to reputation, as it compiles truthful, accurate information, and any stigma suffered "is a result of the offender's status as being adjudicated as a delinquent sex offender and not as a direct result of the notification." *In re J.R.,* 341 Ill. App. 3d at 799; see also *Paul*, 424 U.S. at 710-12 (no deprivation of a protectable liberty or property interest occurs by damage to reputation alone, without some accompanying alteration to "a right or status previous recognized by state law").

¶47    Respondent also relies on numerous cases from foreign jurisdictions in support of his argument. However, we decline to follow them. See *In re J.B.*, 107 A.3d 1, 16-17 (Pa. 2014) (involving a specific "right to reputation" as recognized in Pennsylvania's constitution). Clearly, cases from foreign jurisdictions are not precedential or binding on this court. *Kostal v. Pinkus Dermatopathology Laboratory, P.C.,* 357 Ill. App. 3d 381, 395 (2005). Although comparable decisions from other jurisdictions may be considered for their persuasive value, "[w]hen there is

Illinois case law directly on point, we need not look to case law from other states for guidance," when we have our own precedent to follow. *Id.*

¶48                                    ii. Rational Basis

¶49     To satisfy the rational basis test, " 'a statute need only bear a rational relationship to the purpose the legislature sought to accomplish in enacting the statute.' " *In re J.R.,* 341 Ill. App. 3d at 791-92 (quoting *In re J.W.,* 204 Ill. 2d at 67). Accordingly, a statute will be upheld where it bears a reasonable relationship to the public interest intended to be served and the methods adopted are reasonable means of accomplishing this purpose. *Id.* (quoting *In re J.W.,* 204 Ill. 2d at 67 (quoting *Adams,* 144 Ill. 2d at 390)).

¶50     Relying on a 2014 report by the Illinois Juvenile Justice Commission,[7] respondent and *amici* contend that SORA and the Notification Law provisions no longer bear a rational relationship to the purposes they are intended to serve, *i.e.*, protecting the public, because the offense-based, categorical registration requirements are over-inclusive and counterproductive to rehabilitation of juvenile delinquents. They argue instead for an individualized determination of risk before subjecting a juvenile to registration and notification requirements.

¶51     The commission's report found that adjudicated juvenile sexual offenders have a low risk of reoffending. The report concluded that subjecting juvenile sexual offenders to Illinois's registration laws without regard to risk did not enhance public safety and could undermine juveniles' efforts toward rehabilitation. Illinois Juvenile Justice Commission, Improving Illinois' Response to Sexual Offenses Committed by Youth, at 4. The report indicates that Illinois and 19 other states use a categorical (offense-classification based) system of registration, and Illinois's registry laws do not consider the juvenile's age at the time of the offense or other individual

---

[7] Illinois Juvenile Justice Commission, Improving Illinois' Response to Sexual Offenses Committed by Youth (2014), *available at* http://ijjc.illinois.gov/youthsexualoffenses.

15

characteristics. *Id.* at 52.

¶52 Regardless of the conclusions outlined in the Commission's report, it is, of course, not binding precedent on this court. We are bound to follow our supreme court's decision in *In re J.W.*, which determined that SORA and the Notification Law did not violate substantive due process as they are rationally related to the legitimate government interest of protecting the public and they constitute a reasonable means of accomplishing this goal. *Rosewood Care Center,* 366 Ill. App. 3d at 734. " '[W]hether the legislature will act on the Commission's recommendations remains to be seen. Unless and until that happens, *In re J.W.* guides the analysis of the issue of whether the Act's provisions bear a rational relationship to the protection of the public.' " *In re Maurice D.,* 2015 IL App (4th) 130323, ¶ 38 (quoting *In re M.A.*, 2014 IL App (1st) 132540, ¶ 42, *aff'd in part & rev'd in part,* 2015 IL 118049). Respondent's policy arguments more properly belong to the province of the legislature. "It is best left to the legislature and not the courts to determine whether a statute is wise or whether it is the best means to achieve the desired result." *In re J.W.,* 204 Ill. 2d at 72.

¶53 Accordingly, our analysis is directed by *In re J.W.*, in which our supreme court found that requiring a 12-year-old juvenile to register as a sex offender for his natural life did not violate substantive due process. *In re J.W.,* 204 Ill. 2d at 66, 72. Similar to respondent in the case at bar, the juvenile respondent in *In re J.W.* argued that registration was unreasonable because juveniles were less culpable and more amenable to treatment and rehabilitation than adults. *Id.* at 68. The Illinois Supreme Court reiterated that SORA was rationally related to the public interest of protecting children and there was "nothing unreasonable in the statute's method of serving its purpose." *Id.* at 67-68 (citing *Adams*, 144 Ill. 2d at 386-87). Despite the respondent's youth, the court held that "the public interest to be served by the Registration Act remains unchanged. The

public interest is to assist law enforcement in the protection of the public from juvenile sex offenders. The Registration Act as applied to a 12-year-old child serves that public interest by providing police officers ready access to information on known juvenile sex offenders." *Id.* at 68. The court noted that the Notification Law "strictly limits the availability of information with regard to juvenile sex offenders," as the information may be disseminated to someone only if that person's safety may be compromised, and the information was not available on the Internet. *Id.* at 71. The court held that requiring a 12-year-old offender to register for life was "reasonable in light of the strict limits placed upon access to that information." *Id.* at 72.

¶54    We are also guided by this court's decision in *In re J.R.*, where this court followed the principles set forth in *In re J.W.* in holding that SORA and the Notification Law did not violate substantive due process. *In re J.R.,* 341 Ill. App. 3d at 791. The juvenile respondent in *In re J.R.*, like respondent here, challenged the mandatory registration and disclosure of offender information without an assessment of whether the offender was a continuing danger. *Id*. This court held that a rational relationship existed between registration of juvenile sex offenders and disclosure of their information and protection of the public. *Id.* at 793-94. The court noted that whether "there are better means to achieve this purpose, such as further limiting the time frame during which disclosure may occur, is a matter better left to the legislature." *Id.*

¶55    Respondent argues that SORA and the Notification Law have been amended since these cases were decided and the "2013" versions contain additional provisions, the constitutionality of which has not yet been scrutinized by the courts. However, the amendments to SORA and the Notification Law generally extend even more protection to juvenile offenders. The Illinois Supreme Court found that the 2007 amendments to SORA:

"significantly reduce[d] the impact of the minor's registration requirement. Public Act

95-658 eliminated the provisions that would have required the minor to register as an adult when he reached 17 years of age. See Pub. Act 95-658, § 5, eff. October 11, 2007 (amending 730 ILCS 150/2(A)(5), 3(a)). The minor's registration information will, therefore, be available only to a very limited group of people, including individuals whose 'safety may be compromised for some reason' by him, and the principal, chief administrative officer, or guidance counselor of a school he attends. 730 ILCS 152/121 (West Supp. 2007). In contrast, the adult registry provides for wide dissemination of registration information to the public. See 730 ILCS 152/120(c), (d) (West Supp. 2007).

The minor may also petition for termination of his registration after five years. Pub. Act 95-658, § 5, eff. October 11, 2007 (adding 730 ILCS 150/3-5(c)). The right to petition for termination is not available to adults." *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 203 (2009).

¶56  As our supreme court observed in *In re M.A.,* the termination provision in section 3-5 demonstrates the legislature's recognition " 'that, in many instances, juveniles who engage in sexually inappropriate behavior do so because of immaturity rather than predatory inclinations. The purpose of the termination provisions of section 3-5 is to afford juveniles the opportunity to demonstrate this is true in an individual case, and to prove that they do not pose a safety risk to the community.' " *In re M.A.,* 2015 IL 118049, ¶ 67 (quoting *In re S.B.,* 2012 IL 112204, ¶ 29).

¶57  Contrary to respondent's contention, these amendments demonstrate that our legislature already accounted for in the act that juveniles are different from adults. Their information is not made publicly available on the Internet, they are not required to register as adults once reaching 17 years of age, and they may petition for termination of registration after five years. The fact that their information is provided to their school and anyone else whose safety may be

compromised constitutes a reasonable method of protecting the public. Accordingly, we find respondent has not shown that SORA and the Notification Law violate substantive due process under the rational basis test. They are rationally related to the purpose of protection of the public from sexual offenders and constitute a reasonable means of accomplishing this goal.

¶58                              F. Procedural Due Process

¶59     Respondent next argues that requiring juveniles to register upon adjudication of specified sex offenses without first providing an individualized determination regarding risk level violates procedural due process. Respondent cites recent cases from the United States Supreme Court which have emphasized the unique characteristics of juvenile offenders. See *Miller v. Alabama*, 567 U.S. __,132 S. Ct. 2455 (2012) (finding that mandatory life imprisonment without parole where the offense was committed as a juvenile violates eighth amendment); *Graham v. Florida*, 560 U.S. 48 (2010) (holding that sentence of life without parole for non-homicide crimes committed as a juvenile violated eighth amendment); *Roper v. Simmons*, 543 U.S. 551 (2005) (finding that the imposition of the death penalty on individuals who commit offenses as juveniles violated eighth and fourteenth amendments).

¶60     However, the eighth amendment analyses in these Supreme Court cases cannot support a due process challenge here. "A ruling on a specific flavor of constitutional claim may not justify a similar ruling brought pursuant to another constitutional provision." *People v. Patterson*, 2014 IL 115102, ¶ 97 (*reh'g denied* Jan. 26, 2015), *cert. denied*, __ U.S.__, 136 S. Ct. 399 (2015) (where the defendant cited the eighth amendment analyses in *Roper, Graham,* and *Miller* in challenging the Illinois automatic transfer statute, the court found that due process and eighth amendment standards "differ considerably"). "[A] constitutional challenge raised under one theory cannot be supported by decisional law based purely on another provision." *Id.* The

reasoning in *Patterson* applies here, and we find respondent's reliance on these cases unavailing.

¶61    "A procedural due process claim challenges the constitutionality of specific procedures used to deny a person's life, liberty or property." *In re M.A.*, 2015 IL 118049, ¶ 35. "The fundamental requirements of due process are notice of the proceeding and an opportunity to present any objections." *Id.* We examine (1) whether a life, liberty or property interest has been interfered with by the State; (2) the risk of erroneous deprivation of this interest under the current procedures and the value of additional safeguards; and (3) the administrative and financial burden additional procedures would have on the state's interest. *In re J.R.*, 341 Ill. App. 3d at 795 (citing *Segers v. Industrial Comm'n,* 191 Ill. 2d 421, 434 (2000)).

¶62    Respondent refers to the liberty interests at stake as those he previously identified in his substantive due process challenge, discussed *supra*, and he argues that the opportunity to petition for termination of registration after five years fails to protect these interests because this time period is essential for juvenile development and, as in this case, he posed no threat to society at the time of disposition. He contends that additional procedural safeguards would ensure efficient use of state resources and would not place a financial or administrative burden on the State.

¶63    As previously stated, however, SORA and the Notification Law do not implicate protected liberty or property interests. See *Cornelius,* 213 Ill. 2d at 204; *In re J.W.*, 204 Ill. 2d at 67; *Malchow*, 193 Ill. 2d at 425-26; *In re J.R.*, 341 Ill. App. 3d at 792; *In re T.C.,* 384 Ill. App. 3d at 874-75; *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 74. Moreover, our supreme court in *Konetski*, 233 Ill. 2d at 200-01, rejected the argument that requiring all juvenile offenders to register, without an initial and individualized determination of risk, violates procedural due process.

¶64    In *Konetski*, the juvenile respondent contended that the various registration obligations of

SORA constrained his liberty interests and he was entitled to the additional procedural safeguard of a jury trial. *Konetski*, 233 Ill. 2d at 200-01. Despite respondent's contention that his liberty interests are infringed, the *Konetski* court found that the ability to petition for termination of registration after five years and the limited dissemination of registration information (that is, a minor is not required to register as an adult upon reaching the age of 17, he is not placed on the publicly available registry online, and his information is only available to his school and those whose safety may be at risk) "significantly reduce the impact" of the registration requirements on juveniles and did not violate any liberty interests. *Konetski*, 233 Ill. 2d at 203. In fact, the ability to petition for termination of registration after five years constituted an *additional* procedural safeguard not available to adult offenders. *Id.* As such, the *Konetski* court held that the provisions were "not sufficiently burdensome to mandate the additional procedural protection of a jury trial." *Id.* The court observed that minors were afforded several key procedural safeguards in juvenile proceedings, such as the right to notice, to counsel, to confront witnesses, to avoid self-incrimination, and to be proven guilty beyond a reasonable doubt. *Id.* at 201-02. The court held the requirements were reasonable and the additional safeguards were "sufficient to satisfy the minor's constitutional right to procedural due process." *Id.* at 206.[8]

¶65    We are also guided by this court's decision in *In re J.R.,* which similarly rejected the contention that the juvenile respondent's procedural due process rights were violated by imposing registration without first requiring a separate determination of current dangerousness.

---

[8] Analogously, in the context of juvenile delinquents and the Murderer and Violent Offender Against Youth Registration Act (730 ILCS 154/1 *et seq.* (West 2012)), our supreme court recently rejected the argument that the minor had a due process right to a hearing to establish current dangerousness before being required to register on the violent offender registry, which similarly mandates registration based solely upon conviction or adjudication of a qualifying offense. *In re M.A.*, 2015 IL 118049, ¶¶ 48-49. The court held that "current dangerousness is not relevant or material to the duty to register" under the Violent Offender Act and the minor therefore did "not have a due process right to a hearing to establish a fact that is not relevant or material under Illinois law." *Id.* ¶ 48. The minor was provided all process due in being adjudicated delinquent of the offenses. *Id.* Moreover, because the Violent Offender Act did not violate procedural due process as applied to the minor respondent, it also was not facially unconstitutional. *Id.* ¶ 49.

*In re J.R.*, 341 Ill. App. 3d at 795-800. Because the registration requirement was triggered upon adjudication for a specified offense, a juvenile was not entitled to "a hearing to demonstrate that he was not currently dangerous, when current dangerousness is not relevant or material to the duty to register as required by the Registration Act." *Id.* at 796. The court rejected the juvenile's procedural due process challenge to the Notification Law on the same grounds because the disclosure provisions were triggered upon adjudication, rendering whether the juvenile was "currently dangerous" irrelevant. *Id.* at 797-98. Further, the juvenile offender had already enjoyed a "procedurally safeguarded" opportunity to challenge the adjudication of delinquency. *Id.* at 798.[9]

¶66    Additionally, as the State contends, whether the State's interest in public safety is served by inclusion of juveniles such as respondent on the registry is a matter more appropriately left to the legislature. " '[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines ***.' [Citation.] 'A statute is not invalid under the Constitution because it might have gone farther than it did.' [Citaiton.] " *In re M.A.*, 2015 IL 118049, ¶ 70. We also conclude that the registration and notification provisions accord with the purposes of the Juvenile Court Act, which include rehabilitation of minors, protecting the public from juvenile crime, and holding juvenile offenders accountable. It is appropriate to apply SORA and the Notification Law to juveniles given their intent to protect the public. *In re T.C.,* 384 Ill. App. 3d  at 877 (citing *In re J.W.*, 204 Ill. 2d at 70). Accordingly, we are bound by our supreme court's decisions finding that SORA and the Notification law do not interfere with a protected

---

[9] See also *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 90-92 (procedural due process did not require a hearing to assess the defendant's risk of reoffending before being burdened by the registration requirements as it was "based entirely on the offense for which a sex offender has been convicted" and his "likelihood to reoffend is not relevant to that assessment"); *Logan*, 302 Ill. App. 3d at 332-33 (absence of a hearing before being required to register did not violate procedural due process).

liberty interest and afford respondent sufficient procedural safeguards. *Rosewood Care Center,* 366 Ill. App. 3d at 734.

¶67 G. Eighth Amendment and Proportionate Penalties Clause

¶68 In his final claim, respondent raises eighth amendment and proportionate penalties challenges on appeal, arguing that the "2013 SORNA" laws are more onerous and punitive than the versions previously considered by our supreme court.

¶69 "The cruel and unusual punishment clause of the United States Constitution, which is made applicable to the states through the fourteenth amendment, provides that '[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' " *Maurice,* 2015 IL App (4th) 130323, ¶ 25 (quoting U.S. Const., amends. VIII, XIV). "The proportionate penalties clause of the Illinois Constitution states that '[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' " *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 55 (quoting Ill. Const. 1970, art. I, § 11). The proportionate penalties clause "prohibits criminal penalties that are 'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *Id.* (quoting *People v. Sharpe,* 216 Ill. 2d 481, 487, 521 (2005)). The proportionate penalties clause "is coextensive with the federal constitution's prohibition against cruel and unusual punishment." *Konetski*, 233 Ill. 2d at 206-07 (citing *In re Rodney H.,* 223 Ill. 2d 510, 518 (2006)).

¶70 The Illinois Supreme Court has repeatedly held that SORA and the Notification Law do not constitute punishment. See *Adams,* 144 Ill. 2d at 387-89 (the duty to register under SORA did not constitute punishment as the law had the non-penal purpose of protecting children from sexual crimes and aiding law enforcement in monitoring sexual offenders); *Malchow,* 193 Ill. 2d

at 419-24 (rejecting the defendant's *ex post facto* challenge to SORA and the Notification Law and finding that their intent was protection of the public, not punishment); *Cornelius*, 213 Ill. 2d at 207-09 (holding that the amendment to the Notification Law providing for dissemination of sex offender information on the Internet did not violate *ex post facto* protections as it was nonpunitive); *People v. Cardona*, 2013 IL 114076, ¶ 24 (noting that sex offender registration is not punishment).[10]

¶71 In the juvenile context, our supreme court in *In re J.W.* held that SORA and the Notification Law did not violate the eighth amendment because the information was not generally available on the Internet and public access to the information was limited. *In re J.W.*, 204 Ill. 2d at 74-75. The court also held that the registration and notification provisions did not constitute cruel and unusual punishment and were not analogous to imposition of the death penalty on a juvenile. *Id.* at 75. More recently, the supreme court in *Konetski* found that SORA's registration requirements did not impose a disproportionately harsh penalty on juveniles. *Konetski*, 233 Ill. 2d at 206. Observing that "our precedent is clear that imposition of the Act's requirements on juveniles does not constitute punishment," the court rejected the minor's proportionate penalties clause and eighth amendment challenges. *Id.* at 207-08.

¶72 Accordingly, the precedent from the Illinois Supreme Court clearly holds that SORA and the Notification Law are not punitive. *Rosewood Care Center,* 366 Ill. App. 3d at 734. However, respondent invites this court to analyze the current provisions under the test set forth in *Kennedy*

---

[10] See also *Grochocki*, 343 Ill. App. 3d at 670 (finding the proportionate penalties clause inapplicable because dissemination of sex offender information did not constitute "punishment" or a "penalty"); *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 61-62 (finding that SORA and the Notification Law did not violate the eighth amendment or proportionate penalties clause as they did not impose a grossly disproportionate punishment analogous to parole or probation; rather, they served "legitimate penological goals" even though the restrictions were over-inclusive in the defendant's case, and the proportionality analysis must simply focus on whether a statute serves legitimate penological goals and not whether it *best* serves those goals, as "[t]hat delicate balancing should be reserved for the legislative process").

*v. Mendoza-Martinez*, 372 U.S. 144 (1963), arguing that recent amendments have a punitive effect because they expand who must register (730 ILCS 150/3(c)(2.1) (West 2014)); expand the number of agencies to which an offender must register (730 ILCS 150/3(a), (d) (West 2014)); increase the times a registrant must appear to register and shorten the time for doing so (730 ILCS 150/3(c), 6 (West 2014)); increase the amount of information provided (730 ILCS 150/6 (West 2014)); increase the fees (730 ILCS 150/3(c)(6) (West 2014)); and punish noncompliance more severely (730 ILCS 150/10 (West 2014)).

¶73    Under the *Mendoza-Martinez* test, the court examines seven factors in determining whether a civil statue has a punitive effect:

> "(1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has been historically regarded as punishment; (3) whether the sanction comes into play only on a finding of *scienter*; (4) whether operation of the sanction will promote retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime; (6) whether an alternative purpose to which the sanction may rationally be connected is assignable to it; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned." *People v Fredericks*, 2014 IL App (1st) 122122, ¶ 58 (citing *Malchow,* 193 Ill. 2d at 421 (citing *Mendoza-Martinez,* 372 U.S. at 168-69)).

Respondent must demonstrate the punitive effect of the challenged provisions by "the clearest proof." (Internal quotation marks omitted.) *Malchow,* 193 Ill. 2d at 421.

¶74    Our supreme court analyzed the 1998 version of SORA and the Notification Law under the *Mendoza-Martinez* test in *Malchow* and concluded that the first four factors and the final two factors weighed in favor of finding the Notification Law nonpunitive, while only the fifth factor

weighed in favor of the defendant. *Malchow*, 193 Ill. 2d at 421-24. The court held that the laws did not constitute an affirmative disability or restraint as they placed no restrictions on an offender's movements or activities; the limited dissemination of information was not analogous to branding or banishment and was done in furtherance of a governmental interest; there was no *scienter* required; they did not significantly promote deterrence or retribution; the primary purpose was protection of the public and not punishment; and they were not an excessive means to achieving that purpose. *Id.*

¶75 In *Cornelius*, the court upheld the Internet dissemination provision in the Notification Law, basing its analysis on *Smith v. Doe*, 538 U.S. 84 (2003), which concerned similar registration and notification laws in Alaska. *Cornelius,* 213 Ill. 2d at 207-09. In *Smith,* the United States Supreme Court held that, under the *Mendoza-Martinez* factors, Alaska's laws were nonpunitive as the laws did not create an affirmative disability or restraint because offenders were free to change jobs or residences, the laws did not promote the traditional aims of punishment, they bore a rational relationship to the nonpunitive purpose of public safety, and they were not excessive in relation to this purpose. *Smith*, 538 U.S. at 90-92, 98-103.

¶76 More recently, in *Fredericks*, 2014 IL App (1st) 122122, ¶¶ 58-61, our court undertook a *Mendoza-Martinez* analysis of a recent amendment to SORA which provided that a sex offender convicted of any subsequent felony was required to register for life and concluded that the sex offender registration scheme has not transformed into a punishment since *Malchow*. *Id.* ¶ 58. The court noted that retroactive application of lifetime sex offender registration to the defendant "appears more punitive" because his sex offense conviction occurred in 1999 and he had already completed a 10-year registration period without reoffending, but he was now required to register for life because of a recent drug offense conviction. *Id.* ¶ 59. Nevertheless, the court held that it

was still bound by *Malchow* and concluded that SORA had not become punitive because it served the purpose of protecting the public from sex offenders while limiting application to those who commit a new felony. *Id.* ¶¶ 60-61.

¶77    In the case at bar, we conclude that we are bound by our supreme court's decisions in *Malchow* and *Cornelius* and we do not find a punitive intent behind the challenged provisions in SORA and the Notification Law. As noted in *Malchow*, defendant's speculation "about the collateral consequences of community notification" is not relevant to whether the laws place "an *affirmative* disability or restraint on sex offenders." (Emphasis in original.) *Malchow*, 193 Ill. 2d at 422. Although he contends that SORA and the Notification Law have evolved to become more punitive, these changes reflect social changes and do not manifest a punitive bent. We acknowledge that the scope of who must register has expanded to include those who commit certain "precursor" crimes and the time period for registration was shortened. However, these changes reflect an awareness that such crimes demonstrate a heightened danger of future harm and the shortened time period reflects an individual's increased mobility, both of which are rationally related to protecting the public by closely monitoring convicted sex offenders.

¶78    Respondent also complains that a sex offender must provide more information, such as social media information, but this simply demonstrates the legislature's recognition that society has become increasingly digital since 1998. We also find no punitive purpose behind the registration fees, as a waiver is available in case of indigence and the fees are for administrative purposes. 730 ILCS 150/3(c)(6) (West 2014).

¶79    As we find no punitive intent behind the challenged provisions, we also reject respondent's contentions that he was subjected to cruel and unusual and grossly disproportionate punishment. "Only governmental action that inflicts 'punishment' may be restricted by the eighth

amendment and the proportionate penalties clause." *Avila-Briones,* 2015 IL App (1st) 132221, ¶ 46. We are not persuaded that the challenged provisions here are similar to subjecting a juvenile to mandatory life-without-parole imprisonment like the juvenile in *Miller*, 567 U.S. __, 132 S. Ct. at 2470. Our supreme court has rejected the argument that, considering the unique characteristics of juveniles as recognized by United States Supreme Court cases such as *Roper*, 543 U.S. 551, registration requirements transform into punishment when applied to minors. *Konetski*, 233 Ill. 2d at 207. The record does not support that respondent was subjected to grossly disproportionate punishment. His registration and notification requirements are not the same as the punishment of lifetime incarceration.

¶80                               III. CONCLUSION

¶81     For the reasons stated above, we affirm respondent's finding of delinquency and sentence requiring his registration as a sex offender and his continued compliance with the notification laws.

¶82     Affirmed.

¶83     JUSTICE GORDON, concurring in part and dissenting in part.

¶84     The majority concludes that respondent lacks standing to challenge the penalty provision of the registration acts and then proceeds to consider the constitutionality of these same acts. This makes no sense to me, and I must respectfully dissent from the majority's section on standing. I concur in the majority's ultimate holding, but I dissent from the majority's conclusion that respondent lacks standing to challenge the penalty provision.

¶85     What respondent did, he did under threat of the penalty provision. But for the penalty provision, he would have lacked any incentive to register. Thus, if he has standing to challenge the other provisions, he must have standing to challenge this provision as well.

¶86　　The State argues that respondent does not have standing because no penalty has yet been imposed. The purpose of standing is to ensure that courts are deciding actual, specific controversies and not abstract or moot issues. *Borsellino v. Putnam*, 2011 IL App (1st) 102242, ¶ 90. "To have standing to challenge the constitutionality of a statute, a person must have suffered or be in immediate danger of suffering a direct injury *as a result of* [*the*] *enforcement of the challenged statute*." (Emphasis added.) *People v. Greco*, 204 Ill. 2d 400, 409 (2003).  Thus, one cannot separate a statute from its enforcement mechanism.

¶87　　For a person to have standing, his or her claimed injury:  (1) must be fairly traceable to a respondent's actions; (2) must be substantially likely to be prevented or redressed by the grant of the requested relief; and (3) must consist of a distinct and palpable injury.  *Burnette v. Stroger*, 389 Ill. App. 3d 321, 331 (2009). In the case at bar, (1) respondent registered only due to the threat of the penalty provision; (2) the requested relief, which is the striking of this provision, would redress the problem because then there would be no consequence and, hence, no reason to register; and (3) the distinct and palpable injury is the ramification of being identified as a juvenile sex offender. Thus, respondent has satisfied the requirements for standing.

¶88　　In sum, I would conclude that respondent does, in fact, have standing to challenge the penalty provision and that this is what permits us to proceed to consider the constitutional issue. Thus, I must respectfully dissent from the majority's discussion of standing, although I concur with the majority's ultimate holding.