# Illinois Official Reports

## Appellate Court

---

### *People v. Lee*, 2018 IL App (1st) 152522

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODNEY LEE, Defendant-Appellant. |
| | |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-2522 |
| | |
| Filed | November 30, 2018 |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-16106; the Hon. Clayton J. Crane, Judge, presiding. |
| | |
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Imran Ahmad, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette C. Collins, and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE HALL delivered the judgment of the court, with opinion.<br>Presiding Justice Rochford and Justice Lampkin concurred in the judgment and opinion. |

¶ 1      Following a Cook County bench trial, defendant Rodney Lee was convicted of violating the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2014)) for his failure to register as a sex offender and was sentenced to four years' imprisonment. On appeal, defendant contends that SORA's statutory scheme violates the United States and Illinois Constitutions' due process rights by infringing on registrants' fundamental liberty interests where it places upon them severe restrictions, intrusive monitoring, and burdensome registration requirements without providing substantive or procedural due process. For the following reasons, we affirm the judgment of the trial court.

¶ 2                            BACKGROUND

¶ 3      Defendant was convicted of aggravated criminal sexual abuse in 1998 and was subsequently required to register as a sex offender. In 2014, defendant was indicted for his failure to register as a sex offender, and his trial commenced on May 20, 2015.

¶ 4      At trial, Chicago police detective Matthew Schenatski testified that on August 20, 2014, he was assigned to investigate defendant for failure to register. As part of his investigation, he went to 1108 North Monticello Avenue, defendant's last known address. When he arrived, the front door was unlocked and ajar. Schenatski walked inside and found the apartment vacant; however, there was a cellular phone and a television with wires running outside to a neighbor's property. On cross-examination, Schenatski agreed that he did not have a search warrant for the two-story building at 1108 North Monticello Avenue.

¶ 5      Chicago police detective Ruck testified that on September 3, 2014, as part of defendant's failure to register investigation, he interviewed defendant, who had been taken into custody. Detective Ruck administered *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), and defendant said that he understood them. Defendant told Ruck that he lived at 1108 North Monticello Avenue since 2007 and that he was supposed to register every 90 days. Ruck asked defendant why he had not registered since June 2013, and defendant responded that, when he went to the police department in September 2013, he was told that he needed $100 to register. Ruck told defendant that the registration fee could be waived and that, if he went to the police department, it would have been documented that he tried to register. Defendant then told Ruck that he did not go to the police station but called instead. On cross-examination, Ruck indicated that defendant's statement was made orally.

¶ 6      The parties then stipulated that, if called to testify, Chicago police officer Patrick Loftus would identify defendant and testify that he registered him as a sex offender on June 24, 2013. He would identify People's exhibit number 1 as a true and accurate copy of the registration form that he completed with defendant, bearing his own signature and defendant's signature on each page. He would further testify that, as part of the registration process, he informed defendant of his duty to register every 90 days and that he must register on or before September 22, 2013. Loftus would finally testify that business records maintained by the Chicago Police Department for sex offender registration contain no subsequent registrations or attempts to register by defendant.

¶ 7        The parties further stipulated that, if called to testify, Chicago police officer Figus would testify that he arrested defendant on September 3, 2014, at 9:40 a.m. at 801 North Kedzie Avenue.

¶ 8        People's exhibit number 1 and People's exhibit number 2, a certified copy of defendant's 1998 conviction, were admitted without objection.

¶ 9        After argument, defendant's motion for a directed finding was denied.

¶ 10        Defendant testified that he lived at 1108 North Monticello Avenue and, during the last 10 years, he had two prior felony convictions: a 2009 failure to report a change in address and a failure to register in 2006. On June 24, 2013, he registered at the police station with Officer Loftus, who told him that the next time he came to register, he would have to pay a $100 registration fee. Defendant testified that Loftus said he would not register him if he did not pay and that, although the fee had been waived in the past, he would not waive it again. Defendant called the police station on September 21 or September 22 and explained to the officer who answered the phone that he only had $80. He asked if it would be possible to pay the $80 towards the registration fee and pay the balance later, but the officer told him that he would have to have the full amount in order to register. Defendant decided not to go to the police station because he did not believe they would register him or give him a waiver and he did not want to get arrested. Defendant identified defense exhibit number 1 as a registration fee waiver he received on September 25, 2012, defense exhibit number 2 as a registration fee waiver he received on May 10, 2002, defense exhibit number 3 as a registration fee waiver he received on July 14, 2000, and defense exhibit number 4 as a registration fee waiver he received on July 20, 1999.

¶ 11        On cross-examination, defendant agreed that he received a fee waiver as shown on each of the defense exhibits he previously identified, none of which were executed by Officer Loftus. Defendant reviewed and identified People's exhibit number 5, his registration form from December 26, 2012, which he signed with Officer Solomis Karadjias, and People's exhibit number 6, his registration form from September 25, 2012, which he signed with Officer Ronald Jenkins. While he conceded that when he called the station in September 2013 he did not ask about a fee waiver or identify himself to the officer on the phone, defendant maintained that he called and was told that, if he did not have $100, there was no need to come in.

¶ 12        On redirect, defendant testified that there was no statement in People's Exhibits 4, 5, or 6 that he had to bring money but that he did see that on a registration form in June 2013.

¶ 13        Defense exhibits 2, 3, and 4 were admitted without objection, and the defense rested.

¶ 14        People's exhibits 4, 5, and 6 were admitted, and the State rested in rebuttal.

¶ 15        After argument, the trial court found that defendant had registered several times and was provided several fee waivers. The court found that defendant did not report in person as required, found him guilty of failing to register, and continued the matter for posttrial proceedings.

¶ 16        On June 17, 2015, defense counsel filed a motion for a new trial, a copy of which is not included in the record. On July 9, 2015, defense counsel notified the court that defendant had prepared a *pro se* motion to reconsider, dismiss, and discharge, and the matter was continued to determine whether counsel wished to incorporate any of defendant's arguments into his motion. On July 28, 2015, defense counsel stated that he would not incorporate any of defendant's *pro se* points into his motion for new trial. Defendant's *pro se* motion was filed

that day, and the trial court allowed defendant to argue his motion in addition to counsel's argument on the motion for new trial.

¶ 17     Defendant argued *pro se* that his registration period had expired so it was unconstitutional for him to be convicted in 2011.[1] Further, defendant argued that he was not notified that his registration period was extended and it was an unconstitutional extension. Additionally, he argued that (1) his requirement to register beyond the initial 10-year term without any means to petition for removal was unconstitutional, (2) he should be given an individual assessment to determine whether he posed a continuing risk to the public, and (3) the continued registration requirement is a legislative loophole. These failures, as applied to defendant, violated his due process rights and the proportionate penalties clause.

¶ 18     The State argued that defendant had sexually abused his 10-year-old daughter in 1998. Defendant conceded that he failed to register during his first 10-year term and violated SORA, for which he was sentenced in 2006. Defendant was then informed of his duty to continue to register.

¶ 19     Defendant responded *pro se* before the court that police were supposed to present him with a letter to sign if his registration term was extended. The trial court ultimately denied defendant's *pro se* motion and noted that defendant did perpetrate acts of violence since the date of his original conviction in 1998. Defense counsel then addressed the motion for a new trial, which was also denied.

¶ 20     During sentencing, the State argued that defendant's failure to register was a Class 2 offense and it was extendable. The State recommended a six-year sentence. The defense countered that defendant's only convictions were older and, besides failure to register, he had no convictions since 2011. In allocution, defendant argued that his failure to register should be a Class 3 offense and not Class 2.

¶ 21     The trial court sentenced defendant to four years' imprisonment. Defendant's motion to reconsider sentence was denied, and this timely appeal followed.

¶ 22                           ANALYSIS

¶ 23     On appeal, defendant contends that SORA's statutory scheme violates federal and Illinois due process rights by infringing on registrants' fundamental liberty interests where it places upon them severe restrictions, intrusive monitoring, and burdensome registration requirements without providing substantive or procedural due process. In support of this assertion, defendant first contends that the current version of SORA is punitive in nature. Defendant maintains that, because SORA is punitive and infringes on registrants' fundamental liberty interests without providing procedural or substantive due process of law, this court should declare it unconstitutional on its face and reverse his conviction for failing to register under SORA.

¶ 24                           A. Jurisdiction

¶ 25     Although not raised by the parties, we find it important to note our supreme court's recent holding with regard to an appellate court's jurisdiction to hear constitutional challenges to SORA in *People v. Bingham*, 2018 IL 122008. A reviewing court has an independent duty to

---

[1]This is a reference to a prior conviction for failure to register.

consider issues of jurisdiction, regardless of whether either party has raised them. *People v. Smith*, 228 Ill. 2d 95, 104 (2008).

¶ 26 In *Bingham*, the defendant sought to challenge SORA on a direct appeal from a conviction that triggered SORA obligations based on a prior conviction for attempted criminal sexual assault that occurred in 1983. The defendant challenged SORA with an "as-applied" constitutional challenge and an *ex post facto* challenge. *Bingham*, 2018 IL 122008, ¶¶ 11-12, 14. The State challenged the power of a reviewing court "on direct appeal of a criminal conviction to order that a defendant be relieved of his obligation to register as a sex offender when that obligation was neither imposed by the trial court nor did it in any way relate to the reasons for his conviction and sentence in that court." *Bingham*, 2018 IL 122008, ¶ 15. The supreme court agreed and held that "a reviewing court has no power on direct appeal of a criminal conviction to order that defendant be relieved of the obligation to register as a sex offender when there is neither an obligation to register imposed by the trial court nor an order or conviction that the defendant is appealing that is directly related to the obligation or the failure to register." *Bingham*, 2018 IL 122008, ¶ 18. The court further clarified that "[t]he two proper ways that the kinds of constitutional issues involved in this case typically make their way to a reviewing court are (1) through a direct appeal from a case finding a defendant guilty of violating the regulation he attempts to challenge as unconstitutional, such as the sex offender registration law [citation], or (2) by filing a civil suit seeking a declaration of unconstitutionality and relief from the classification as well as the burdens of sex offender registration." *Bingham*, 2018 IL 122008, ¶ 21.

¶ 27 In the instant case, as defendant is on direct appeal from a conviction of violating SORA, his constitutional challenges to SORA are properly before this court.

¶ 28                                                B. Standing

¶ 29 Initially the State contends that defendant's inclusion of a criminal offense, a licensing regulation, and a prohibition on name changes in his argument should be summarily rejected. The State argues that (1) it cannot enforce a proximity restriction unless a violation of that statute occurs and defendant has not been charged with a violation of that statute and also (2) that the regulations are not criminal offenses. The State further contends that this court recently found that a registrant under SORA does not have standing to attack even the penalty provision of SORA where there is no allegation of noncompliance, citing *In re A.C.*, 2016 IL App (1st) 153047, ¶ 24, which distinguished *People v. Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 18-20, 30-31.

¶ 30 The State misstates the lack of standing finding of *In re A.C.*, 2016 IL App (1st) 153047. In that case, this court found that the respondent lacked standing because he was not suffering or in immediate danger of suffering a direct injury as a result of enforcement of section 10 of SORA (730 ILCS 150/10 (West 2014)) because there was no allegation that respondent failed to comply with the registration required under SORA and was being charged with a felony. *In re A.C.*, 2016 IL App (1st) 153047, ¶ 24. This court noted that, unlike in *Avila-Briones*, application of the "penalty" provision of section 10 was not automatically being applied, as it first required that respondent fail to abide by the registration requirements and then he must be charged with a violation and convicted after a trial. *In re A.C.*, 2016 IL App (1st) 153047, ¶ 24.

¶ 31 The circumstances presented in the present case are more similar to those presented in *Avila-Briones*, 2015 IL App (1st) 132221, and *People v. Pollard*, 2016 IL App (5th) 130514. In

order to have standing to bring a constitutional challenge, a party must show that he is within the class aggrieved by the alleged unconstitutionality. *In re M.I.*, 2013 IL 113776, ¶ 32.[2] He must have suffered or be in immediate danger of suffering a direct injury as a result of the enforcement of the challenged statute, and the claimed injury must be (1) distinct and palpable, (2) fairly traceable to defendant's actions, and (3) substantially likely to be prevented or redressed by the grant of the requested relief. *Pollard*, 2016 IL App (5th) 130514, ¶ 26 (citing *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 27).

¶ 32    Like the defendants in *Avila-Briones* and *Pollard*, the SORA statutory scheme provisions that defendant challenges automatically applied to him on his release from prison. As a result of his conviction, defendant was subject to the SORA statutory scheme, including registration restrictions, residency restrictions, employment restrictions, restrictions on where he may be present, and restrictions on his privileges to drive or change his name for the rest of his life, and no contingency occurred before those laws applied to him. See *Pollard*, 2016 IL App (5th) 130514, ¶ 27. In light of what happened to defendant due to his violation of SORA, the threat of prosecution can hardly be speculative but is real and immediate. See *People v. Minnis*, 2016 IL 119563, ¶ 16. Additionally, defendant, like other registrants, will be subjected to a lifetime of government surveillance and restraint and "must alter his behavior in a way that the vast majority of the public never will." *Pollard*, 2016 IL App (5th) 130514, ¶ 27. A favorable ruling from this court invalidating these restrictions would redress these injuries. *Pollard*, 2016 IL App (5th) 130514, ¶ 27. Accordingly, we find that defendant has standing to raise his due process challenges to SORA.

¶ 33                        C. Defendant's Facial Due Process Challenges

¶ 34    On appeal, defendant contends that SORA's statutory scheme violates federal and Illinois due process rights by infringing on registrants' fundamental liberty interests where it places upon them severe restrictions, intrusive monitoring, and burdensome registration requirements without providing substantive or procedural due process. In support of this assertion, defendant first contends that the current version of SORA is punitive in nature. Defendant maintains that, because SORA is punitive and infringes on registrants' fundamental liberty interests without providing procedural or substantive due process of law, this court should declare it unconstitutional on its face and reverse his conviction for failing to register under SORA.

¶ 35    Specifically, defendant contends that recent amendments to SORA call for a reexamination of prior decisions on this issue. He acknowledges that both the United States and Illinois Supreme Courts have previously upheld the constitutionality of earlier versions of sex offender registration and notification statutes against similar challenges in *Smith v. Doe*, 538 U.S. 84 (2003), and *People v. Malchow*, 193 Ill. 2d 413 (2000). He asserts, however, that SORA should

---

[2]We note that this sentence was originally cited by *Avila-Briones* and subsequently in *Pollard*; however, it was cited incorrectly, with the last word as "constitutionality" instead of "unconstitutionality." See *Pollard*, 2016 IL App (5th) 130514, ¶ 26; *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 27. But *cf. In re M.I.*, 2013 IL 113776, ¶ 32.

be analyzed as it currently exists and notes that a facial constitutional due process challenge to SORA has not yet been addressed by our supreme court in its current form.[3]

¶ 36    Defendant further contends that the affirmative disabilities and restraints of SORA are imposed in violation of his procedural and substantive due process rights under both the United States and Illinois Constitutions. In reasserting his contention that SORA is punitive in nature, defendant claims that the regulations imposed will continue to regulate nearly all aspects of his life to a degree more extreme than probation or mandatory supervised release (MSR) for the rest of his life, thus impinging on his fundamental right to liberty. Moreover, defendant contends that SORA violates registrants' procedural due process rights because there are no procedural safeguards to winnow registrants who pose little danger to society from the sex offender registry nor any appeal procedures from the registration requirements. As stated earlier, defendant contends that, because SORA is punitive and infringes on registrants' fundamental liberty interests without providing procedural or substantive due process of law, this court should declare it unconstitutional on its face and reverse his conviction for failing to register under SORA.

¶ 37                              D. The Current SORA Scheme

¶ 38    Defendant summarizes the differences between the 2014 SORA and the 1998 version which was upheld by *Malchow* as follows:

        (1) Applies to more individuals (see 730 ILCS 150/3(c)(2.1) (West 2014) (now requires every sex offender to register if convicted of any subsequent felony));

        (2) Expands the number of agencies with which a registrant must register in person (see 730 ILCS 150/3(a) (West 2014) (requires registrants to register if residing or temporarily domiciled in a place for 3 or more days rather than 10 days); 730 ILCS 150/6 (West 2014) (requires registrant to notify authorities in place he resides and authorities at his travel destination if he travels for 3 or more days); 730 ILCS 150/3(d) (West 2014) (requires personal registration with authorities having jurisdiction over registrant's workplace within 3 days of starting or changing employment); 730 ILCS 150/3(a) (West 2014) (requires personal reporting to public safety or security director of any higher education institution at which registrant works or attends));

        (3) Greatly expands the quantity of information a registrant must provide when registering (see 730 ILCS 150/3(a) (West 2014) (requires registrant to provide not just positive identification and proof of residence but a current photograph, place of employment, telephone numbers, employer's telephone number, school attended, all e-mail addresses, instant messaging identities, chat room identities and other Internet communications identities that registrant uses or plans to use, all uniform resource locators (URLs) registered or used by registrant, a copy of terms and conditions of parole or release, county of conviction, license plate numbers for every vehicle, age of registrant and victim at the time of the offense, and any distinguishing marks located on the body of the registrant));

        (4) Increases the number of times a registrant must report in person (see 730 ILCS 150/6 (West 2014) (requires registration of individuals without fixed residences every

---

[3]*Bingham*, 2018 IL 122008, addressed as-applied and *ex post facto* challenges to SORA; *Minnis*, 2016 IL 119563, addressed a first amendment overbreadth challenge.

week, individuals who change residences and any additional times law enforcement so requests));

(5) Increases the length of time most registrants are required to register (see 730 ILCS 150/7 (West 2014) (requires former registrants to register for a period of registration based on the period currently required for the offense for which the registrant was previously registered and imposes lifetime registration on those adjudicated sexually dangerous, as well as sexually violent persons, those defined by section 2(E) (730 ILCS 150/2(E) (West 2014)) as sexual predators and individuals previously required to register under the Child Murderer and Violent Offender Against Youth Sex Offender Registration Act (730 ILCS 154/1 *et seq.* (West 2014)));

(6) An expansion of the categories of offenders classified as "sexually dangerous," "sexually violent," or "sexual predators" (730 ILCS 150/2 (West 2014));

(7) Shortens the period within which a registrant must appear in person to register from 10 days to 3 days (730 ILCS 150/3(b), (c)(3), (c)(4) (West 2014));

(8) Increases the initial and annual registration fees from $10 and $5, respectively, to $100 each year (730 ILCS 150/3(c)(6) (West 2014));

(9) Punishes noncompliance more severely (see 730 ILCS 150/10 (West 2014) (punishes initial violations as Class 3 felonies and subsequent violations as Class 2 felonies rather than Class 4 felonies); 730 ILCS 150/7 (West 2014) (imposes mandatory 10-year extension of registration period on registrants who fail to comply));

(10) Imposes greater restrictions on where sexual predators may be present (see 720 ILCS 5/11-9.4-1 (West 2014) (renders it a crime for sexual predators to be present in a park or to loiter within 500 feet of a park));

(11) Requires all sex offenders to renew their driver's license annually (730 ILCS 5/5-5-3(*o*) (West 2014)); and

(12) Prohibits sex offenders from petitioning to change their names (735 ILCS 5/21-101 (West 2014)).

¶ 39    Defendant contends that the 2014 SORA is far more onerous than the 1998 version, which was found nonpunitive, and it imposes significant disabilities and restraints on registrants' fundamental liberty interests without consideration of rehabilitative potential or restoration to useful citizenship.

¶ 40                                              E. Due Process
¶ 41    The analysis is guided by familiar principles. All statutes carry a strong presumption of constitutionality. *People v. Hollins*, 2012 IL 112754, ¶ 13. Accordingly, this court will uphold statutes whenever reasonably possible, resolving all doubts in favor of their validity. *People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010). To rebut this presumption, a party challenging a statute must establish clearly that it violates the constitution. *People v. Mosley*, 2015 IL 115872, ¶ 22. On the constitutional issues before us, our review is *de novo*. *Mosley*, 2015 IL 115872, ¶ 22.

¶ 42    At the outset, we note that defendant's challenge to the 2014 SORA is framed solely as a facial challenge to the constitutional validity of the changes made by the legislature since our supreme court's consideration of the 1998 SORA and does not challenge the validity of the 2014 SORA as applied specifically to him.

¶ 43     A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to successfully raise because an enactment is facially invalid only if no set of circumstances exist under which it would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008); *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008). "The fact that the enactment could be found unconstitutional under some set of circumstances does not establish its facial invalidity." *Napleton*, 229 Ill. 2d at 306; *People v. Johnson*, 2015 IL App (1st) 1333663, ¶ 27.

¶ 44     Facial challenges are disfavored for several reasons. *Grange*, 552 U.S. at 450. Claims of facial invalidity often rest on speculation that raise the risk of "premature interpretation of statutes on the basis of factually barebones records" (internal quotation marks omitted) (*Sabri v. United States*, 541 U.S. 600, 609 (2004)); they run contrary to the fundamental principle of judicial restraint that courts should not anticipate a question of constitutional law before the necessity of deciding it or create a rule of constitutional law broader than necessary to decide the precise question before it (*Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346-47 (1936)); and they threaten to short-circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution (*Grange*, 552 U.S. at 451).

¶ 45     The due process clauses of the fifth and fourteenth amendments provide that "No person shall *** be deprived of life, liberty, or property, without due process of law ***." U.S. Const., amends. V, XIV. The United States Supreme Court has held that the due process clauses protect individuals against two types of government action. *Salerno*, 481 U.S. at 746. So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience" (*Rochin v. California*, 342 U.S. 165, 172 (1952)) or interferes with rights "implicit in the concept of ordered liberty" (*Palko v. Connecticut*, 302 U.S. 319, 324-25 (1937)). When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. *Salerno*, 481 U.S. at 746 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). This requirement has traditionally been referred to as "procedural" due process. *Salerno*, 481 U.S. at 746. Likewise, the Illinois Constitution contains its own separate guarantee of due process to all persons. See Ill. Const. 1970, art. I, § 2.

¶ 46     When determining whether a statute violates constitutional guarantees of due process, a reviewing court must first determine the nature of the right upon which the statute allegedly infringes. *People v. Beard*, 366 Ill. App. 3d 197, 200 (2006). Classification of the right affected dictates the level of scrutiny to be applied by a reviewing court in determining whether the statute in question is in accordance with the constitution. *Napleton*, 229 Ill. 2d at 307. Where the right infringed upon is a fundamental right, the statute is subject to strict scrutiny analysis. *Beard*, 366 Ill. App. 3d at 200. In order to survive strict scrutiny, the measures employed by the government body must be necessary to serve a compelling state interest and must be narrowly tailored to it. *Napleton*, 229 Ill. 2d at 307.

¶ 47     Where a statute does not affect a fundamental constitutional right, the test for determining whether the provision comports with due process is the rational basis test. *People v. Cornelius*, 213 Ill. 2d 178, 203 (2004). To satisfy the rational basis test, a statute must only bear a rational relationship to the purpose the legislature sought to accomplish in enacting the statute, and the

means adopted must be a reasonable method of accomplishing the desired objective. *In re J.W.*, 204 Ill. 2d 50, 67 (2003) (citing *People v. Adams*, 144 Ill. 2d 381, 390 (1991)).

¶ 48    Thus we must determine whether defendant's due process challenges involve a fundamental right. Defendant asserts that he has a fundamental right to live without burdensome and intrusive monitoring of the minutiae of his life and without government interference in his right to live or be present in certain locations. He concedes that Illinois courts have generally not recognized the right to be free from registration as a fundamental right but maintains that the "calculus" changes when a registrant is faced with the punishment and burdens enumerated in the current version of SORA. He likens the effects of lifetime registration to the effects of the lifetime surveillance by government authorities noted in *Weems v. United States*, 217 U.S. 349, 366 (1910), and concludes that SORA goes beyond mere reporting. Instead, it impinges on almost every aspect of a registrant's life, implicating the fundamental right to be free from government dictates as to where one might live and what occupations one might choose to make a living.

¶ 49    As noted by defendant, Illinois courts have previously held that SORA does not implicate a fundamental right and thus is subject only to the rational basis test. *Beard*, 366 Ill. App. 3d at 201 (citing *In re J.W.*, 204 Ill. 2d at 67). While defendant has cited numerous cases from other jurisdictions finding that the respective sex offender registration acts implicated a fundamental right, he does not cite, nor have we found, any Illinois case on point. This court has previously addressed whether SORA implicates a fundamental right to be free from a lifetime of burdensome, intrusive monitoring and restrictions in *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 69-71, as noted in *People v. Parker*, 2016 IL App (1st) 141597, ¶ 78. After analyzing the "prohibitions, obligations, and mandatory dissemination of information" required by the SORA statutory scheme, the court determined that the provisions did not infringe on any fundamental right. *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 72-76; see also *Cornelius*, 213 Ill. 2d at 203-04; *In re J.W.*, 204 Ill. 2d at 67. The court then determined that SORA passed rational basis review because it serves the legitimate state interest of protecting the public from sex offenders and is rationally related to that interest despite the possibility that it may be overinclusive. *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 82-84; *Parker*, 2016 IL App (1st) 141597, ¶ 78. The court further analyzed the additional restrictions on where a registered sex offender may work, live, or be present; the license renewal requirement; and the prohibition on a registered sex offender changing his or her name and declined to recognized any of them as implicating what would clearly be a new fundamental right. *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 75-76; *Parker*, 2016 IL App (1st) 141597, ¶ 79. Based on binding Illinois precedent, we must find that the SORA restrictions do not rise to the level of implicating a fundamental right, although we do agree that SORA's burdens and restrictions significantly impact a registered sex offender's life.

¶ 50    This is not the end of the analysis, however. Defendant's failure to identify a fundamental right means that we apply the rational basis review to the SORA statutory scheme. *People v. Rodriguez*, 2018 IL App (1st) 151938, ¶ 23.

¶ 51    Rational basis review is highly deferential to the legislature; it does not focus on the wisdom of the statute or whether it is the best means to achieve the desired outcome. *Rodriguez*, 2018 IL App (1st) 151938, ¶ 24. Rather, as long as there is a conceivable basis for finding the statute rationally related to a legitimate state interest, the law must be upheld. *Rodriguez*, 2018 IL App (1st) 151938, ¶ 24. Most importantly, under rational basis review, a

statute is not unconstitutional because it may be underinclusive or overinclusive. *Rodriguez*, 2018 IL App (1st) 151938, ¶ 25.

¶ 52 Turning our attention to defendant's facial constitutional challenge of the SORA statutory scheme, we find it constitutional under the rational basis test. While not every offender is necessarily inclined to commit another sex offense, subjecting the group as a whole to certain restrictions serves a legitimate state purpose, to which SORA is rationally related to achieve, even though it may not be perfect in its execution. *Parker*, 2016 IL App (1st) 141597, ¶ 80. Thus, we find that SORA does not violate substantive due process.

¶ 53 As was found by the court in *Avila-Briones*, we further find that additional procedures are not necessary to satisfy due process because the civil registration requirements of SORA are based entirely on the convicted offense, which provides a defendant with a " 'procedurally safeguarded opportunity to contest,' " and the offender's likelihood of recidivism is not relevant to determining whether he committed the charged offense. *Parker*, 2016 IL App (1st) 141597, ¶ 81 (quoting *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 91). Because SORA is not unconstitutional, there is no constitutional mandate for procedures that would allow a sex offender to demonstrate that he or she is not likely to reoffend. *Parker*, 2016 IL App (1st) 141597, ¶ 82 (citing *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 88-92). Thus there is no basis for finding that SORA violates procedural due process under rational basis analysis.

¶ 54                                                    CONCLUSION

¶ 55 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 56 Affirmed.